855 A.2d 713

William MERRELL, Appellee,

v.

CHARTIERS VALLEY SCHOOL DISTRICT, Bernard A. Sulkowski, Michael L. Bonacci, Thomas Helbig, Michael Dempster, Jeff Choura, John Franjione, Patricia Frey, Bridget Kelly, Kathleen Lewis, Beth McIntyre, Mary Lou Petronsky, Appellants.

Supreme Court of Pennsylvania.

Argued Sept. 8, 2003.

Decided Aug. 18, 2004.

98

Michael Louis Brungo, Esq., Gregory C. Melucci, Esq., Julie Marie Pfeiffer, Esq., Alfred C. Maiello, Esq., Pittsburgh, for Chartiers Valley School District, et al.

Michael Edwin Kennedy, Esq., for William Merrell.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice NEWMAN.

The Commonwealth of Pennsylvania encourages and recognizes the service of her armed forces. In terms of repayment, veterans of the Revolutionary War received grants of land in new territories,[1] and Pennsylvania passed the first Veterans'

---

1. Pennsylvania, like several of the original thirteen colonies, enlisted the support of her residents for military service in the Revolutionary War with an offer of free lands. It selected reserves in its western domains as the location of its bounty lands, both to garner support for the Revolution and provide stability and security in its colonial expansion. By placing veterans on the frontier, Pennsylvania could rely on military experience to protect any developing settlements from Indian incursions. *See generally* H. Richard Uviller & William G. Merkel, *The Second Amendment in Context: The Case of the Vanishing Predicate*, 76 CHI.-KENT L.REV. 403 (2000).

Preference Act in 1887, Act of May 19, 1887, P.L. 75 (repealed), which provided that honorably discharged Civil War veterans receive preferential treatment "for employment in all public departments and works of the Commonwealth, provided such veterans possessed the other requisite qualifications." Op. Att'y Gen. No. 320, 192 (1940). Later, the Act of April 12, 1939, P.L. 27 (repealed), extended the veterans' preference in public employment to "veterans of all wars wherein the Nation engaged." *Id.* Over the ensuing decades, this statute has been amended, repealed, and reenacted until the version at issue in the instant matter went into effect on January 1, 1976, with little deviation from the initial Act. Within this historical perspective, we review the challenge of the Chartiers Valley School District (School District), and the members of its Board of Education (Board), to an Order of the Commonwealth Court, reversing an Order of the Allegheny County Court of Common Pleas (Common Pleas), dismissing the Complaint of William Merrell (Merrell) as untimely filed.

## FACTS *and* PROCEDURAL HISTORY

The facts are not in dispute. Prior to the commencement of the 1997–98 school year, Merrell applied for an advertised position with the School District as a social studies teacher. He was not selected. In 1999, Merrell again applied for an advertised position, this time advancing to the fourth step of the School District's five-step hiring process. By letter dated April 28, 1999, the School District informed Merrell that it had appointed another candidate. The School District did not specify the reasons for not selecting Merrell. Subsequently, on May 10, 1999, counsel for Merrell wrote to the School District Superintendent, requesting that the School District reconsider its decision to hire another candidate for the upcoming school year because Merrell was entitled to preference in employment by virtue of the Veterans' Preference Act.[2]

Receiving no response to his letter, Merrell filed a Complaint in Equity on July 21, 1999, and an amended complaint

2. Act of August 1, 1975, P.L. 233, *as amended,* 51 Pa.C.S. §§ 7101–7109.

on September 30, 1999. He alleged a diminution of wage earning capacity as well as a loss of tenure, wages, and other benefits accompanying a position with the School District. He requested that Common Pleas order the School District to hire him as a social studies teacher with credit for lost tenure, and to pay him lost wages commencing from the date that the School District initially failed to hire him for the 1997–98 school year.

In response, the School District filed Preliminary Objections, alleging that Common Pleas lacked subject matter jurisdiction on the basis that the School District is a local agency and that the provisions of the Local Agency Law, 2 Pa.C.S. §§ 551–555, 751–754, provide the exclusive means by which decisions of local government agencies can be contested. The School District claimed that its letter of April 28, 1999, constituted an adjudication from which Merrell was required to file an appeal within thirty days pursuant to Section 5571(b) of the Judicial Code, 42 Pa.C.S. § 5571(b). Relying on *In re Appeal of Gomez*, 688 A.2d 1261 (Pa.Cmwlth.1997),[3] Common Pleas held that the April 28th letter issued by the School District was an adjudication within the meaning of 2 Pa.C.S. § 101. Noting that Merrell filed his Complaint almost ninety days after the adjudication, Common Pleas sustained the Preliminary Objections of the School District and dismissed the Amended Complaint with prejudice for lack of subject matter jurisdiction. Finally, the court observed that there is no

---

**3.** In *Gomez*, a participant in a Section 8 housing program received letters from the county housing authority demanding that she reimburse the county for monies that it had paid her former landlord for damages to her leased premises. The letters threatened to remove Gomez from the housing program for non-payment. Gomez requested a hearing to dispute the damages and subsequently filed an appeal with the Berks County Court of Common Pleas (reviewing court) pursuant to Section 752 of the Local Agency Law, 2 Pa.C.S. § 752. The reviewing court dismissed the matter as not justiciable and Gomez appealed to the Commonwealth Court. That court determined that " '[a] letter from an agency may qualify as an adjudication so long as the letter is the agency's final order, decree, decision, determination, or ruling and such decision impacts on a person's personal or property rights, privileges, immunities, duties, liabilities, or obligations.' " *In re Appeal of Gomez*, 688 A.2d at 1263 (quoting *Wortman v. Philadelphia Commission on Human Relations*, 139 Pa.Cmwlth. 616, 591 A.2d 331, 333 (1991)).

property right in prospective employment, only in the termination of existing employment.

The Commonwealth Court reversed in an unpublished Opinion and remanded the matter to Common Pleas for an appeal *nunc pro tunc* and *de novo* review. The court agreed with the School District that the Local Agency Law provided the mandatory and exclusive statutory means to challenge a decision of the Board.[4] It also concluded that Merrell had a property right to preference in employment. The court relied on the decisions in *Carter v. City of Philadelphia*, 989 F.2d 117 (3d Cir.1993), and *Pennsylvania State Troopers Ass'n v. Pennsylvania State Police*, 800 A.2d 995 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 572 Pa. 715, 813 A.2d 847 (2002), to find that a protected property interest existed and that due process concerns required notice and an opportunity to be heard. It also concluded that, based on *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981), the April 28th letter was not a valid adjudication.

## DISCUSSION

■ The threshold issue is whether the April 28th letter from the Board indicating that it would be hiring another candidate for the position constituted an adjudication within the context of the Local Agency Law. If it did, Merrell's Complaint was untimely and Common Pleas correctly dismissed the Complaint with prejudice.

■ An "adjudication" is defined in Section 101 of Administrative Law and Procedure, 2 Pa.C.S. § 101, as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." Further, "[n]o adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a

4. We note that we have previously determined that a School District along with its Board is a local agency pursuant to the Local Agency Law. *See Nicolella v. Trinity Area Sch. Dist. Sch. Bd.*, 444 Pa. 544, 281 A.2d 832, 835 (1971).

hearing and an opportunity to be heard." 2 Pa.C.S. § 553. Thus, for a letter of elimination to qualify as a valid adjudication, it must (1) represent a final order, decree, decision, determination or ruling; (2) impact on individual personal or property rights, privileges, immunities, duties, liabilities or obligations, *Guthrie v. Borough of Wilkinsburg*, 505 Pa. 249, 478 A.2d 1279, 1281 (1984); and (3) comply with the statutory requirements of notice and an opportunity to be heard. 2 Pa.C.S. § 553. To have a property interest, an individual must have a legitimate claim of entitlement or expectation arising from an independent source, such as state law or contract. *See Adler v. Montefiore Hosp. Ass'n*, 453 Pa. 60, 311 A.2d 634, 645 (1973), *cert. denied*, 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974); *see also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

It is axiomatic that there is no inherent property interest in prospective employment. However, in the instant matter, a state statute, the Veterans' Preference Act, confers an interest on those who meet certain established criteria. The applicant must be a veteran, must be honorably discharged, and must possess the minimum qualifications to perform the duties involved. 51 Pa.C.S. §§ 7101, 7104(a). Further, there is a constitutional necessity that the qualifications of the veteran be established before the veteran is entitled to the preference. *See Eggleston v. City of Philadelphia*, 380 Pa. 158, 110 A.2d 183, 185 (1955); *Carney v. Lowe*, 336 Pa. 289, 9 A.2d 418, 420 (1939). As we have previously indicated, there "must be some reasonable relation between the basis of preference and the object to be obtained...." *Commonwealth ex rel. Maurer v. O'Neill*, 368 Pa. 369, 83 A.2d 382, 383 (1951) (quoting *Commonwealth ex rel. Graham v. Schmid*, 333 Pa. 568, 3 A.2d 701, 704 (1938)). " 'No property interest in government employment exists *per se* ....' " *Guthrie*, 478 A.2d at 1282 (quoting *Sterling v. Dept. of Environmental Resources*, 504 Pa. 7, 470 A.2d 101, 104 (1983)).

In determining that the April 28th letter was not an adjudication, the Commonwealth Court sought guidance in the deci-

sion of this Court in *Callahan*. There, a police officer received a letter informing him that the benefits he had been receiving pursuant to the Heart and Lung Act,[5] were being terminated. The officer challenged the determination of the Commonwealth Court that the letter constituted an adjudication from which he had not timely appealed. The challenge was grounded on the basis that he had been denied an opportunity to be heard. This Court essentially agreed that the letter announced a final determination of the officer's property rights, but concluded that the Administrative Agency Law "expressly requires an agency to supply an aggrieved party notice of a hearing and an opportunity to be heard." *Callahan*, 431 A.2d at 948. Therefore, *Callahan* represents a three-step process to determine whether an agency letter constitutes an adjudication. Initially, the determination must be made as to whether actual property rights are implicated. Next, there must be an assessment as to whether the letter constitutes final agency action. Finally, if the letter has satisfied the first two steps, it is an adjudication, but it is not a *valid* adjudication if there is an absence of notice and an opportunity to be heard; an invalid adjudication does not trigger a claim limitations period. Implicit in our decision was the determination that Officer Callahan had a property interest in the Heart and Lung benefits that he had been receiving and that the decision to terminate those benefits was an adjudication within the meaning of 2 Pa.C.S. § 101. Thus, in *Callahan*, the first two steps were not at issue, though Officer Callahan's compliance with these two steps was obvious within the text of our Opinion. Significantly, the Court did not conclude that the letter was not an adjudication, but was careful to note throughout its analysis that the letter in *Callahan* was not a *valid adjudication*. The third analytic step was absent, rendering the termination letter an adjudicatory nullity.

█ We recognize that a veteran may see little value in a preference for appointment that does not result in that appointment. It is, however, for the legislature to decide wheth-

5. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. § 637.

er and to what extent state and local agencies should be constrained in their employment decisions. The presentment of a governmental gratuity does not change the nature of the gratuity. The giving of a veteran's preference does not cause that preference to become a vested right. Hence, statutory and case law in this Commonwealth has established with some clarity the proper considerations for a veteran's preference in hiring when examination scores form the basis for the hiring decision. *See, e.g., Housing Authority of Chester Co. v. State Civil Service Comm'n,* 556 Pa. 621, 730 A.2d 935 (1999). Precedent relative to hiring decisions when there are no examination scores is less settled. *See, e.g., Brickhouse v. Spring–Ford School District,* 540 Pa. 176, 656 A.2d 483 (1995) (Zappala, J. joined by Cappy, J. concurring, Castille, J. dissenting).

The property interest at issue here is not in the teaching position itself, but in the preference. The core principles of the Veterans' Preference Act are contained in Sections 7103, 7104, and 7107. Section 7103 provides for the addition of ten points to the score of a veteran who has passed a civil service appointment or promotion examination.[6] Section 7107 allows veterans to include total years of service in the military when calculating seniority for purposes of a reduction in force.[7]

**6.** Section 7103(a) states:

(a) **Commonwealth examinations.**—Whenever any soldier shall successfully pass a civil service appointment or promotional examination for a public position under this Commonwealth, or any political subdivision thereof, and shall thus establish that he possesses the qualifications required by law for appointment to or promotion in such public position, such soldier's examination shall be marked or graded an additional ten points above the mark or grade credited for the examination, and the total mark or grade thus obtained shall represent the final mark or grade of such soldier, and shall determine his standing on any eligible or promotional list, certified or furnished to the appointing or promoting power.

51 Pa.C.S. § 7103(a).

**7.** Section 7107 provides:

Whenever a reduction in force is necessary in any public position, or on public works of the Commonwealth and its political subdivisions, and personnel are discharged according to seniority, the number of years of service of any soldier shall be determined by adding his total years of service in the civil service or on public works to his total

Neither of these sections is applicable to the instant matter except to assist in defining the parameters of the preference. Section 7104(a) [8] requires the appointing power to give preference for appointment or promotion in non-civil service positions, and Sections 7104(b) and 7104(c) grant the veteran a point preference following civil service examination.[9] Further, the Act encompasses three policy considerations reflected in Sections 7102 [10] and 7107, which are "(1) recruitment of disci-

> years of service as a member of the armed forces of the United States, or in any women's organization officially connected therewith during any war in which the United States engaged.
> 52   Pa.C.S. § 7107.

8.   Section 7104(a) states:

> (a) Non-civil service.—Whenever any soldier possesses the requisite qualifications and is eligible to appointment to or promotion in a public position, where no such civil service examination is required, the appointing power in making an appointment or promotion to a public position shall give preference to such soldier.
> 51   Pa.C.S. § 7104(a).

9.   The statutory text for Sections 7104(b) and 7104(c) relates to civil service examinations and state:

> (b) Name on civil service list.—Whenever any soldier possesses the requisite qualifications, and his name appears on any eligible or promotional list, certified or furnished as the result of any such civil service examination, the appointing or promoting power in making an appointment or promotion to a public position shall give preference to such soldier, notwithstanding, that his name does not stand highest on the eligible or promotional list.
> (c) Name not on civil service list.—In making an appointment or promotion to public office where a civil service examination is required, the appointing or promotional power may give preference to any soldier, who has passed the required examination for appointment or promotion to such position, and possesses the requisite qualifications, although his name does not appear on the eligible or promotional list certified or furnished to the appointing or promoting power.
> 51   Pa.C.S. 7104(b), (c).
> In *Schmid*, this Court concluded that lowering the passing score for a veteran applicant was unconstitutional because passing an eligibility examination satisfied the requirement that persons appointed to fill public positions be "reasonably fitted for the position." *Schmid*, 3 A.2d at 706. The *Schmid* decision held that veterans' preference is constitutional if the preference is applied after the veteran meets the minimum qualifications for the position. *Id.*

10.   Section 7102 states in pertinent part:

plined and experienced public employees, (2) reward for service to country, and (3) reimbursement for seniority lost while serving in the military."[11]   One commentator expressed the opinion that initial appointment preferences can be classified as either absolute preferences, supplemental point preferences, or tie-breaking preferences.[12]  Milcoff at 647.  We find this a reasonable classification and, within this Commonwealth, we believe that the General Assembly has statutorily provided for supplemental point preferences and tie-breaking preferences.

We observe that the statute states simply that veterans shall be given a preference for appointment before non-veterans, without describing the nature or strength of the preference.  The Court addressed this ambiguity in *Schmid.*

In *Schmid*, the Court issued the first relevant holding as to the constitutionality of the Veterans' Preference Act provision that gave veterans fifteen percent towards their score prior to taking the civil service examination.  This provision permitted veterans to receive lower passing grades than non-veterans. Surveying the decisions of other jurisdictions, the Court held that veteran's preference acts were only valid if they set forth the requirement that a veteran must possess the minimum qualifications to perform the duties required.  We qualified

> (a) **General rule.**—When any soldier shall take any civil service appointment or promotional examination for a public position under the Commonwealth, or under any political subdivision thereof, he shall be given credit in the manner hereinafter provided; for the discipline and experience represented by his military training and for the loyalty and public spirit demonstrated by his service for the preservation of his country, as provided in this chapter.

51   Pa.C.S. § 7102(a).

**11.** Joseph P. Milcoff, *The Veterans' Preference Act After Brickhouse v. Spring–Ford School District: Has the Preference been Rendered Illusory?*, 103 Dick. L.Rev. 639, 644 (Spring 1999) (hereinafter "Milcoff").

**12.** "Defined in terms of the civil service examination, the absolute preference statute provides that all veterans who pass the test shall be preferred over all other candidates.  The point-bonus preference 'grants to the veteran a point bonus which is not conferred upon the non[-]veteran.'  The tie-breaking preference awards a preference to the veteran only when the applicants' job qualifications are otherwise equal." *Id.* at 647–48 (internal citations omitted).

the right of the legislature to grant such preferences by adding that "where war service is appraised, in the allotment of public positions, beyond its value, and the preference goes beyond the scope of the actual advantages gained in such service, the classification becomes void and the privilege is held unreasonable and arbitrary." *Schmid,* 3 A.2d at 704.

In *Brickhouse,* we attempted to define the parameters of a veteran's preference pursuant to Section 7104(a). Mr. Brickhouse was a veteran who applied for a position as a secondary level social studies teacher. He met the minimum qualifications required for the position, but had only one year of experience teaching social studies in the eleven years following his graduation from college. In those eleven years, he had spent ten of them "working as a paralegal, a bookkeeper, a manager of a trailer park, a manager of a hunting lodge, and a worker at reform schools or other special schools for children." *Brickhouse,* 656 A.2d at 486. The Spring–Ford School District decided to hire a highly qualified non-veteran, whom it felt had superior credentials. Mr. Brickhouse brought suit after the School District refused to grant him absolute veteran's preference in hiring. The School Board granted Mr. Brickhouse a hearing and, following that hearing, the School Board found that the position had already been filled at the time that Mr. Brickhouse submitted his application, and that he was not entitled, in any event, to the position. *Id.* at 484–85.

The trial court permitted Mr. Brickhouse to appeal *nunc pro tunc* and dismissed his Complaint, affirming the factual findings of the School Board in the process. The Commonwealth Court reversed, holding that the Veterans' Preference Act required that Mr. Brickhouse receive an absolute preference. The court rejected all of the arguments put forth by the School District and opined that the School District "may not defeat the purpose of the Act by recognizing other 'requisite qualifications' beyond what the Commonwealth [has] established." *Brickhouse v. Spring Ford School District,* 155 Pa. Cmwlth. 402, 625 A.2d 711, 717 (1993), *rev'd,* 540 Pa. 176, 656 A.2d 483 (1995).

██ This Court concluded that considerable deference must be afforded the hiring authority in its determination of whether and to what extent an applicant possesses the meritorious qualities required for a position. We posited that public employers must be free to set hiring requirements to ensure competency. It is clear, following our decision in *Brickhouse* that, with respect to Section 7104(a), there is no absolute preference in this statutory section for hiring veterans, particularly as no civil service list or examination is applicable to this position. Public employers are not required to hire preference eligible veterans if they do not believe the candidate is qualified or possesses the requisite experience.[13] Without an absolute preference in employment, Merrell does not have a property right to preference in employment such as to render the letter of April 28th an adjudication. The April 28th letter was informatory in nature, not adjudicatory. It appears that Merrell was able to advance only to level four of the five-step hiring process. He was not among, as nearly as we can determine from the scant record before this Court, the final applicants under consideration.

██ However, we also concluded in *Brickhouse* that, whether a hiring authority has properly considered the Veterans' Preference Act and established qualifications meant to circumvent that Act, is to be determined on a case-by-case basis.[14]

13. In *Burger v. Bd. of Sch. Directors of McGuffey Sch. Dist.*, 576 Pa. 574, 839 A.2d 1055 (2003), this Court noted that the express purpose of the School Code is to " 'establish a thorough and efficient system of public education, to which every child has a right.' " *Id.* at 1061 (quoting *Hazleton Area Sch. Dist. v. Zoning Hearing Bd.*, 566 Pa. 180, 778 A.2d 1205, 1213 (2001)). We also indicated that the School Code vests school districts in this Commonwealth with all necessary powers to enable them to carry out the provisions of the School Code in furtherance of their essential functions. Within this mandate, a school board has the obligation to hire the most qualified teachers and the discretion to determine which candidates are the most qualified. *See* 24 P.S. § 11-1106.

14. In *Brickhouse* we indicated:

We are mindful that a public employer might be able to formulate qualifications for a job in such a way as to defeat the veterans' preference required by the act. When such formulations are undertaken in bad faith without regard to legitimate need, they must fail,

The instant matter was decided on Preliminary Objections and no determination has been made that Merrell possessed the appropriate qualifications or that the School District attempted to circumvent the Act in order to merit the application of the veteran's preference. While we have stated that "veterans are not to be preferred in the assignment of public jobs merely on the strength of being veterans," *Brickhouse,* 656 A.2d at 486, we note that, once an applicant is able to establish entitlement to a veteran's preference, the burden falls to the employer to establish that the veteran was not qualified.

Common Pleas concluded that the April 28th letter constituted an adjudication and dismissed the Complaint with prejudice as untimely. This was clear error. While the Commonwealth Court determined that Common Pleas should have permitted "an appeal *nunc pro tunc* " with *de novo* review, an appeal *nunc pro tunc* is unnecessary in light of our determination that the April 28th letter is not an adjudication.[15] The proper disposition is a reversal of the Order of Common Pleas with remand to permit the matter to go forward.

## CONCLUSION

■ We must not overlook the fact that the nature and extent of veterans' preferences involve a question of public policy. In the enactment of the statute, a coordinate branch of government, whose members were chosen by the people to represent them, has given expression that veterans are to be given preference in employment once they meet the qualifications established for consideration. Within its enactment, the General Assembly has provided for a point-bonus preference for those veterans required to take and pass a civil service examination and for a tie-breaking preference for candidates

but determination of the legitimacy of the employer's formulation of hiring criteria can be done only on a case by case basis.
*Brickhouse,* 656 A.2d at 487.

15. The Commonwealth Court also concluded that there was a deficiency of due process because Merrell was not afforded a hearing. We decline to address this facet of the instant matter because Merrell neither requested a hearing nor raised a claim of due process violation in his Complaint.

with comparable qualifications. In the instant matter, the preference had not yet ripened because Merrell did not succeed in reaching the final level of consideration. The applicants remaining after the close of the fourth stage, the point at which Merrell was removed from consideration, were those considered qualified for the open teaching position. Therefore, Merrell was not among the most qualified candidates for the position. The Commonwealth Court erred in concluding that the preference had become a constitutionally protected property interest. On remand, Merrell will have the opportunity to demonstrate his qualifications and, if he is able, show that there was a flaw in the process that precluded the ripening of his interest, antagonistic to precepts of the Veterans Preference Act.

■ We do not believe that the judiciary should become a general court of review for school district employment decisions, but do believe that, although the statute is aspirational in nature, the preference can be properly applied within the parameters that we have articulated. We emphasize again that Merrell does not have a property interest in the teaching position he sought, but in the veteran's preference that only ripens when he can establish the requisite qualifications for the position. The purpose of Section 7104(a) is not to place veterans in a better position than other applicants simply because they are veterans, *Brickhouse*, but to provide a preference in the final selection process among candidates of comparable quality.

The Order of the Commonwealth Court is affirmed on different grounds.

Former Justice LAMB did not participate in the decision of this case.

Justice SAYLOR files a concurring opinion in which Justice NIGRO joins.

Justice CASTILLE files a dissenting opinion.

Justice SAYLOR, concurring.

Although I am in alignment with the lead opinion's ultimate disposition, I respectfully maintain several conceptual differences with its approaches both to administrative agency law generally, as well as to questions connected more specifically to veterans' preferences.

On the agency law point, the lead appears to rest its holding in this case on the notion that an adjudication (for purposes of triggering the pertinent appeal period under the Judicial Code, *see* 42 Pa.C.S. § 5571(b)) requires impact on some actual, known property (or other specified) interest. Without an interest of this sort that is apparent on the face of a pre-hearing record, the lead Justices' approach seems to be that there can be no adjudication and, correspondingly, no available judicial review of an agency disposition. *See* Opinion Announcing the Judgment of the Court, 579 Pa. at 108–11, 855 A.2d at 720–21 ("Without an absolute preference in employment, Merrell does not have a property right to preference in employment such as to render the letter of April 28th an adjudication.").

Certainly, this approach draws support from a literal reading of the statutory definition of adjudication.[1] It does not, however, account for the routine review afforded by Pennsylvania appellate courts to the numerous administrative agency adjudications in which claimed entitlements are denied based on agency determinations to the effect that the claimant lacks a property right or interest.

Some perspective concerning this conflict can be gleaned from the overall structure and purpose of the Administrative Agency Law. The General Assembly has crafted a statutory scheme by which various rights and entitlements can be adjudicated in a manner that comports with constitutional due process norms. *See, e.g.,* 2 Pa.C.S. §§ 504, 553 (requiring notice of a hearing and an opportunity to be heard as a

---

1. As the lead opinion indicates, this definition subsumes "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights ... of any or all of the parties to the proceeding in which the adjudication is made." 2 Pa.C.S. § 101.

prerequisite to a valid adjudication).[2]  In conformance with those norms, a critical aspect of the scheme is the provision for judicial review.  *See generally* 73A C.J.S. PUBLIC ADMINISTRATIVE LAW AND PROCEDURE § 173 (2004) (explaining, at least as a general proposition, that "[o]pportunity for judicial review is required by due process of law to determine whether administrative actions are within reasonable limits of administrative discretion or the scope of power of the agency").  Indeed, in the administrative arena the United States Supreme Court applies a presumption that a decision of an administrative body is subject to judicial review, in the absence of a clear showing that the legislature intended to preclude it.  *See, e.g., Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670–71 & n. 3, 106 S.Ct. 2133, 2135–36 & n. 3, 90 L.Ed.2d 623 (1986) ("The very subordination of the agency to judicial jurisdiction is intended to proclaim the premise that each agency is to be brought into harmony with the totality of the law, the law as it is found in the statute at hand, the statute book at large, the principles and conceptions of the 'common law,' and the ultimate guarantees associated with the Constitution." (quoting L. JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 327 (1965))); *accord* 73A C.J.S. PUBLIC ADMINISTRATIVE LAW AND PROCEDURE § 172.

A framework for administrative law that would afford review to the government when a claimed entitlement to a property interest prevails, but deny review to the claimant when the interest is not recognized at the agency level and/or is not apparent from the face of a pre-hearing record, simply would not comport with the due process concepts integral to the design of Pennsylvania's system.  Therefore, to give effect to the Legislature's clear intent, the touchstone of an adjudication in Pennsylvania administrative law should be, as it is in the federal system,[3] a genuine controversy as to a claimed

**2.**  While such procedures may not be constitutionally required in relation to entitlements that do not have a constitutional dimension, the Legislature has nevertheless standardized the procedure for adjudicating the defined interests according to a due process model.

**3.**  The federal Administrative Procedures Act defines "adjudication" as an agency process for the formulation of an "order," and an "order" as

entitlement in the nature of a property (or other specified) right or interest. The Commonwealth Court has recognized as much, *see, e.g., Hasinecz v. Commonwealth, Pennsylvania State Police,* 100 Pa.Cmwlth. 622, 627–28, 515 A.2d 351, 354 (1986) (indicating that an adjudication for purposes of appeal need involve only a final order affecting a purported property right),[4] and I would take this opportunity to expressly adopt its reasoning and conclusion to this effect.

Despite my difference with the lead Justices on this point, I agree with their decision to permit Mr. Merrell's complaint to go forward. In this respect, my reasoning is based on the conclusion that, regardless of whether or not the School District's decision to deny employment to Mr. Merrell was an adjudication, it was not a valid one as to him under the Local Agency Law, since the School District did not comply with the statute's notice-of-hearing-and-opportunity-to-be-heard requirement. *See* 2 Pa.C.S. § 553 ("No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard."); *Callahan v. Pennsylvania State Police,* 494 Pa. 461, 465, 431 A.2d 946, 948 (1981) (holding that an adjudicatory letter that failed to comply with the statutory requirements of notice and an opportunity to be heard was not valid and

"the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551.

4. In relevant part, the Commonwealth Court explained:

Whether a property right exists in the narrower sense of the definition in Section 101 of the Administrative Agency Law is a legal question requiring examination of statutes, regulations, and/or contracts. A substantive property right could never be established simply because the appealable order refers to the final determination as an adjudication. Thus, it must be that an 'adjudication,' examined for purposes of establishing this Court's original or appellate jurisdiction, does not always mean an order which does, in the final analysis, affect a property right.... While we are constrained to recognize that this interpretation of 'adjudication' is not immediately apparent, it is reconcilable with the statutory definition of the term in Section 101 of the Administrative Agency Law.... [W]e can perceive of [sic] no other rational analysis or conclusion.

*Hasinecz,* 100 Pa.Cmwlth. at 628, 515 A.2d at 354 (emphasis omitted).

therefore did not provide a basis for appeal under the Local Agency Law).

On the veterans' preference issue, the lead's analysis segues into a discussion of various types of preferences, and its reasoning suggests that only an absolute form of preference can give rise to an interest on the order of a property right for purposes of the Administrative and Local Agency Laws. *See* Opinion Announcing the Judgment of the Court, 579 Pa. at 108–10, 855 A.2d at 720. However, our case law confirms that other forms of preferences may in fact give rise to such an entitlement, including the supplemental-point or tie-breaking varieties.[5] In the present case, it is simply unknown whether Mr. Merrell possesses the requisite qualifications that would entitle him to preference under the statute and thereby confirm his asserted property interest, since the judicial proceedings never progressed beyond the pleadings stage. My position is that it is therefore premature for the Court to attempt to resolve the question.

Justice NIGRO joins this concurring opinion.

Justice CASTILLE, dissenting.

Although I might agree with the lead opinion's substantive resolution of this issue, I am not satisfied that appellee

---

5. *See Housing Auth. of County of Chester v. Pennsylvania State Civil Serv. Comm'n,* 556 Pa. 621, 643, 730 A.2d 935, 947 (1999) ("[T]he [veterans preference provisions of the Military Affairs Act] clearly require[ ] that mandatory veterans preference be afforded to any veteran who is applying for a civil service position and who is on an Eligible List due to his performance on the civil service examination[;] [t]he appointing authority may not impose additional threshold requirements on a veteran under the guise that it is setting forth the requisite qualifications[.]"); *Pennsylvania Game Comm'n v. State Civil Serv. Comm'n (Taccone),* 789 A.2d 839, 845 (Pa.Cmwlth.2002) (same); *cf. Basile v. Elizabethtown Area Sch. Dist.,* 61 F.Supp.2d 392, 400 (E.D.Pa. 1999) (observing that the veteran plaintiff would have enjoyed a property interest in preference for hiring under the non-civil service appointment provision of the VPA if he had been qualified); *Brickhouse v. Spring–Ford Area Sch. Dist.,* 540 Pa. 176, 180, 656 A.2d 483, 485 (1995) (holding that a veteran must be given preference under the non-civil service provision only if he possesses the necessary qualifications for a position as determined by the hiring body).

presented a timely challenge below. I conclude that appellee's challenge was not timely and, therefore, I respectfully dissent.

Appellant School District argues in its brief, and the Commonwealth Court held, that the Local Agency Law, 42 Pa.C.S. § 5571, provides the time frame for challenging a decision like the April 28, 1999 letter from the School District which apprised appellee, William Merrell, of its decision to hire another candidate for the teaching position for which Merrell had applied. Section 5571 provides clearly and unambiguously that "an appeal from a tribunal or other government unit to a court ... must be commenced within 30 days after the entry of the order from which the appeal is taken." The plurality finds that the April 28, 1999 letter did not constitute an adjudication because "Merrell does not have a property right to preference in employment such as to render the letter of April 28th an adjudication." 579 Pa. at 110–11, 855 A.2d at 721. I disagree with the plurality's view of what amounts to an adjudication.

In my view, the Common Pleas Court correctly found that the April 28, 1999 letter was an adjudication within the meaning of 2 Pa.C.S. § 101, which defines an adjudication as: "Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." The letter *sub judice* embodied the School District's final decision to hire someone other than Merrell, and that decision was a final adjudication triggering Merrell's rights under the Veterans' Preference Act.

I am concerned that the lead opinion's conclusion that the preference had not yet "ripened" because Merrell had not reached the final stage of consideration will provide an easy avenue for employers to circumvent the precepts of the Veterans' Preference Act. The Act does not require that a veteran reach the final stage of consideration in order for the preference to be triggered. Section 7104(a), 51 Pa.C.S. § 7104(a), relating to non-civil service employment, provides: "Whenever any soldier possesses the requisite qualifications and is eligible

to appointment to or promotion in a public position, where no such civil service examination is required, the appointing power in making an appointment or promotion to a public position shall give preference to such soldier." Under the plain language of the Act, Merrell's right to the preference arose when he applied for the teaching position. As a result, the April 28, 1999 letter fits the statutory definition of an adjudication and the letter triggered Merrell's thirty-day period in which to appeal the decision to the Common Pleas Court, which he failed to do.

The School District contends that the Commonwealth Court's finding that the April 28, 1999 letter was not a valid adjudication based upon this Court's decision in *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981), is in error because the Commonwealth Court misstated our holding in *Callahan*. I agree with the School District that the Commonwealth Court misread the *Callahan* decision as stating that an adjudication that is invalid is not subject to the thirty-day limitation period for filing an appeal. In *Callahan*, as the School District notes, the agency letter notified the appellant that his Heart and Lung Act benefits would be terminated at a future date. This Court held that the actual date of termination, rather than the notification date, triggered the thirty-day appeal period. Here, irrespective of the merits of the decision, the School District's April 28, 1999 letter comprised the sole action on the part of the School District. There was no future date on which the School District would take further action with respect to Merrell. The letter notified Merrell that the School District had already acted by appointing another candidate. The letter was, therefore, the triggering event for the thirty-day appeal period.

I also find persuasive the School District's argument that, because the School District would be taking no further action on his application, Merrell was obligated to appeal within thirty days:

Unlike the police officer in *Callahan* who had not been deprived of his existing right at the time that he received

his letter, Merrell definitively knew that he had not been selected for the job and that no further action would be taken with regard to his application. Nonetheless, on July 21, 1999, eighty-four (84) days after receiving the letter from the District, Merrell filed his Complaint with the Court of Common Pleas of Allegheny County. Merrell, having already received notice of the Board's action, and having no reason to wait for further action, had no reasonable basis to sit on any right that he had to appeal the District's decision to hire another candidate.

Appellants' Brief at 31–32. On this record, in my view, the School District is correct.

For these reasons, I would find that the April 28, 1999 letter constituted an adjudication from which Merrell had thirty days to mount any challenge. Merrell failed to do so in a timely manner. Accordingly, I would reverse the decision of the Commonwealth Court and reinstate the Common Pleas Court order dismissing Merrell's complaint.