# Richard Allen Preparatory Charter School v. School District of Philadelphia

*Mark G. Morford, Patricia A. Hennessy, Kevin M. McKenna, Jennifer K. McLoughlin, Abiye F. Mariam, Melissa M. Green, Matthew H. Haverstick and John E. Riley,* for plaintiffs.

*Miles H. Shore, Paul J. Cianci, Michael I. Levin, Allison* and *Allison S. Petersen, Arleigh P. Helfer, III, Carl Solano and Deena Schneider,* for defendants.

GLAZER, *J.,* APRIL 21, 2014— OPINION

Article III § 14 of the Pennsylvania Constitution requires the General Assembly to provide public education to serve the needs of the Commonwealth. The Constitution recognizes that the cause of education is one of the distinct obligations of the State but makes it an indispensible government function.[1] Presently pending before the court is an issue of first impression, whether defendant School

---

1. *Foreman v. Chester-Upland School District,* 941 A.2d 108 (2008), *citing Malone v. Hayden,* 329 Pa. 213, 223, 197 A.344 352(1938).

Reform Commission ("SRC") has the authority to suspend the requirements of the Charter School Law as it pertains to enrollment caps and funding requirements.

A. Richard Allen Preparatory Charter School.

Richard Allen Preparatory Charter School ("Charter School") was created in 2001 when the Board of Education of the School District of Philadelphia ('School District") granted it an original charter. The original charter did not contain an enrollment cap nor did it incorporate extraneous conditions outside the scope of the Pennsylvania's Charter School Law. On September 1, 2005, the Charter School was renewed for a five year term. The renewal contained an enrollment cap of 400 students.

In 2010, after operating under the 2005 charter for five years, Richard Allen submitted a renewal charter application for a five-year term beginning in 2010. On June 16, 2010, the SRC adopted Resolution SRC-35 which contained a provision limiting the enrollment of Richard Allen to 400 Students. The SRC also passed Resolution SRC-53 on June 16, 2010 which authorized the Charter School to educate 25 additional students, to make a total enrollment of 425 students.

B. Folk Arts-Cultural Treasures Charter School

The Folk Arts-Cultural Treasures Charter School obtained a charter in 2005, and operated under that charter. In 2010, the Charter School requested a renewal. On June 16, 2010, the SRC adopted resolution SRC-35 which contained a provision limiting the enrollment of the Charter School to 438 students in grades K-8. Under Resolution SRC-53 also dated June 16, 2010, the Charter School was authorized to educate 40 additional students,

to make a total enrollment of the Charter School to 438 students in grades K-8.

C.   Wakisha Charter School

Wakisha Charter School began operation in 2000, when the Board of Education of the School District of Philadelphia granted its original charter. After a one-year extension of the original charter, Wakisha's Charter was renewed for a five-year term beginning in 2005. In 2010, Wakisha submitted a renewal charter application for a five-year charter term to begin 2010. On June 16, 2010, the SRC adopted resolution SRC-35 which contained a provision limiting the enrollment of Wakisha to 400 students.

D.   Walter D. Palmer Leadership Partners Charter School

Walter D. Palmer Leadership Partners Charter School received its original charter from the Charter School Appeal Board for a five-year term, commencing July 1, 2000. Leadership Partners' charter was renewed for a five year term, commencing on September 1, 2005. The renewal charter limited Leadership Partners' enrollment to 675 students. On January 15, 2010, after operating under the 2005 renewal charter for five years, the Charter School submitted a renewal charter application for a five-year charter term to begin in 2010. On June 16, 2010, the SRC adopted Resolution SRC-44 which contained a provision limiting the enrollment of Leadership Learning to 675 students.[2]

_____
2. The Walter D. Palmer Leadership Partner's Charter School was the charter school in involved subject in the matter of *School Dist. of Philadelphia v. Department of Educ.*, 41 A.3d 222 (2012) which is currently before the Supreme Court of Pennsylvania for consideration.

### E.  Delaware Valley Charter High School

Delaware Valley Charter High School began operation in 2000, when the Board of Education of the School District of Philadelphia granted its original charter. Delaware Valley's charter was renewed for a five-year term, commencing 2005. In 2010, Delaware Valley submitted a renewal charter application for a five-year charter term to begin in 2010. On June 16, 2010, the SRC adopted Resolution SRC-35 which contained a provision limiting the enrollment to 400 students.

### F.  Facts Applicable to all Charter Schools

In 2009 and 2010, the Charter Schools submitted renewal applications. On May 18, 2010, a representative in the SRC Charter School's office sent an email to each Charter School requesting certain documentation in connection the Charter School's charter renewal request. The Charter Schools were responsive to this request. On June 7, 2010, a School District representative emailed each of the Charter Schools stating that the charter renewal vote had been moved from June 9, 2010 to June 16, 2010.

At the public meeting on June 16, 2010, the School District never provided the Charter Schools with notice of a hearing on the Proposed Charter, an opportunity to present witnesses or to cross examine witnesses or findings of facts or conclusions of laws. The Charter Schools received the SRC's renewal report in the form of individual resolutions as set forth above. The resolutions were revealed and provided for the first time at the SRC's June 16, 2010 Public Meeting. The Charter Schools did not agree to the enrollment caps or the alleged additional conditions contained within the Proposed Charter. The conditions included but were not limited to the following:

1. Denying funding for the Charter School's special education students unless the School satisfied certain conditions that were allegedly not mandated by the Charter School Law;

2. Requiring the Charter School to comply with provisions governing curriculum and assessment of student performance that were allegedly contrary to or in violation of the Charter School Law;

3. Requiring the Charter School to administer School District's city-wide academic assessments and mandated performance targets set by the School District's city wide academic accountability systems;

4. Prohibiting Charter School professional staff, including teachers from becoming employees or independent contractors of management or educational management entities;

5. Requiring the Charter School's annual report to incorporate specific information which is above and beyond the requested information within Pennsylvania Secretary of Education's form prescribed by the Secretary of Education;

6. Making the School District's obligation to make payments to the Charter School an unsecured obligation and removing as an option the Charter School's ability to have a lien, security interest, claim or right to any revenues, receipts, accounts or income of the School District whether paid or payable to the School District;

7. Requiring the Charter School to use the School District's Computer Network to report enrollment numbers;

8. Requiring each Charter School to provide notification of its admissions lottery, and allow the School District the right to observe the Charter School's admissions lottery process;

9. Requiring each Charter School to submit monthly student attendance reports to the School District;

10. Requiring each Charter School to maintain certain insurance policies, including specified levels of monetary coverage and name the School District and the Commission as insureds on most policies and requiring the Charter School to comply with "Child Find" provisions pursuant to 22 Pa. Code § 14.121 which provides that school districts must identify and locate children eligible for special education services throughout the entire district.

On November 27, 2010, the SRC emailed the renewal Charter Agreement to each Charter School for signature. The Charter Schools objected to the Resolutions and the Proposed Charters and in response proffered a proposed one page charter approved by the Pennsylvania Department of Education.

Richard Allen Preparatory Charter School, Delaware Valley Charter High School, Walter D. Palmer Leadership Partners Charter School, Wakisha Charter School, and Folk Arts-Cultural Treasures Charter School (hereinafter collectively referred to as "Charter Schools") filed individual complaints in December 2010 and January 2011 seeking declaratory relief against the School District and the SRC. On December 28, 2010, the SRC granted the Charter Schools until January 10, 2010 to return the signed renewal Charter Agreement. The charters were not accepted by any of the Charter Schools.

On November 15, 2012, after the instant actions were filed and while the actions were being litigated, the SRC adopted Resolution SRC 11-1 which provides in part as follows:

> Resolved, that the SRC, pursuant to its authority under Section 6-696 of the Public School Code, including without limitation, section 6-696 (i)(3), suspends section 17-1723-A(d) of the Charter School Law, but such suspension shall not affect any signed written agreements between the School District and any charter school with respect to enrollment limits and schedules relating to managed growth. All other provisions of Section 17-1723-A shall remain in full force and effect.

On August 15, 2013, the SRC adopted Resolution SRC-1 which provides in part:

> Resolved, that the School Reform Commission, in order to provide additional flexibility to deal effectively and quickly with issues facing the School District, pursuant to Section 6-696 (i)(3) of the School Code, hereby suspends, effective immediately, the requirements of Section 17-1723-A(d)(1) and (2) and any other provisions of the School Code that restrict in any way the power of the School Reform Commission to impose limits on charter school enrollment, along with any applicable regulations on that subject; and be it

> Further Resolved, that Resolution SRC 11-a, approved by the School Reform Commission on November 14, 2012 is clarified to be consistent with the terms of this resolution.

> Resolved, that the School Reform Commission, in order to provide additional flexibility to deal effectively and

quickly with issues facing the School District, pursuant to Section 6-696(i)(3) of the School Code, hereby suspends the requirements of Section 17-1725-A(a) (5) and (6) and any applicable regulations, relating to funding for charter schools, effective immediately only as to requests for withholding of subsidies made after the date of this Resolution.

These actions were stayed at various times throughout the litigation from June 22, 2012 to June 14, 2013 due to the financial crisis of the School District and to provide the parties with opportunities to resolve the matter. On October 16, 2013, the court lifted the stay and consolidated all matters under one caption. Presently pending before the court are the Charter Schools' Motions for Summary Judgment.[3]

## DISCUSSION

I. The June 16, 2010 resolutions and the proposed Charter[4] do not qualify as adjudications under local agency law.

Before addressing the merits of the pending motions for summary judgment, the court must first determine whether it has subject matter jurisdiction over this dispute. The School District argues that the Charter Schools failed to timely exercise their statutory remedies under the Local Agency Law to contest the SRC's June 16, 2010

---

3. The SRC states that since the Charters have not been renewed, the Charter Schools are operating in violation of the Charter School Law. However, until a final determination is issued regarding an application to renew, the charter school may continue to function as if its charter were still in effect, because no formal action to non-renew has been completed. *Cmty. Acad. of Philadelphia Charter Sch. v. Philadelphia Sch. Dist. Sch. Reform Comm'n*, 65 A.3d 1023, 1030-31 (Pa. Commw. Ct. 2013).

4. Proposed Charter refers to the submission to Folks Arts-Cultural Treasures Charter School a proposed charter on November 27, 2010.

resolutions issued to each of the Charter Schools with the exception of Folks Art-Cultural Treasures Charter School which was issued a proposed charter which is also at issue here. This court finds as a matter of law, that the resolutions and submission of the proposed charter do not constitute adjudications, the instant actions are timely filed, and that this court does have subject matter jurisdiction.

An adjudication is defined in 2 Pa. C.S. § 101, as "any final order, decree, decision, determination or ruling by any agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made." Further, "no adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard."[5]

Thus, in order for the resolutions or the proposed charter to qualify as valid adjudications, they must represent a final order, decree, decision, determination or ruling, have an impact on individual personal or property rights, privileges, immunities, duties, liabilities or obligations and comply with the statutory requirements of notice and an opportunity to be heard. Here, the SRC's resolutions and proposed charters do not constitute valid adjudications since they fail to comply with the notice-of-hearing and opportunity to be heard requirements.[6]

The June 16, 2010 resolutions and the proposed charter were not preceded by due process protections of notice

---

5. *Merrell v. Chartiers Vailey School Dist.,* 579 Pa. 97, 855 A.2d 713 (2004), citing 2 Pa. C.S. §553.

6. 2 Pa. C.S. §553 ("No adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard.").

and a hearing, the right to reasonable examination and cross examination, and the benefit of findings of fact and conclusions of law. The resolutions were first provided to the charter schools on June 16, 2010 at a public meeting. The public meeting did not display any indicia of due process. Only one person was permitted to present on behalf of the respective charter schools. There was no opportunity for presentation or examination of documentary evidence or cross examination of all necessary witnesses from the School District and the Commission. Severe time limitations of three minutes for each charter school's representative did not provide the charter schools with any opportunity to be heard. Indeed, the SRC admitted that no hearings were held with regard to the resolutions and refused to disclose communications between the School District and the Commission relating to the June 16, 2010 Resolutions.[7] Based on the foregoing, this court finds that the passage of resolutions and the submissions of the proposed charter did not constitute valid adjudications. Consequently, this court has subject matter jurisdiction over this action.[8]

II. The November 2012 and August 2013 Resolutions Suspending the Charter School Law enrollment and funding requirements are invalid.

The General Assembly created Charter Schools in Pennsylvania to provide parents and students with "expanded choices in the types of educational opportunities that are available within the public school

---

7. Objections by the SRC to Plaintiff's First Set of Interrogatories.

8. Defendants also argue that this matter is not proper for a declaratory judgment. Having found that the Resolutions and the Proposed Charter were not valid adjudications under Local Agency Law, this declaratory judgment action is proper.

system."[9] Public school choice is particularly important for impoverished students whose parents cannot afford to send them to private schools. In enacting the Charter School Law, the General Assembly was especially concerned with increasing learning opportunities for all students, even those who are impoverished.[10]

The Charter School Law, 24 P.S. § 17-1701-A *et. seq.* defines a charter school as "an independent public school established and operated under a charter from the local board of school directors and in which students are enrolled or attend."[11] A stated purpose of charter schools is to "provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system."[12]

A charter is a government license. The Charter School Law governs the terms and forms of a charter and acts as legal authorization for the establishment of a charter school.[13] School Districts maintain discretion to deny, renew or terminate a charter school's charter, but that authority is restricted to a narrow list of reasons prescribed under §17-1729-A of the Charter School Law.[14] A school district cannot condition the grant or renewal of a charter on compliance with provisions that violate the Charter

9. 24 P.S. § 17-1702-A(5).
10. See, 24 P.S. § 17-1702-A (2).
11. 24 P.S. § 17-1703-A.
12. 24 P.S. § 17-1702-A(5). *See also Mosaica Academy Charter Sch. v. Com. Dept. of Ed.*, 572 Pa. 191, 206, 813 A.2d 813, 822 (2002) ("... the General Assembly was clear in defining a charter school as a public school ..."); *West Chester Area Sch. Dist. v. Collegium Charter Sch.*, 571 Pa. 503, 507, 812 A.2d 1172, 1174 (2002) ("A charter school is defined under the [Charter School Law] as an independent, nonprofit, public school ...").
13. § 17-1720-A.
14. 24 P.S. § 17-1725-A(a)(5); 24 P.S. § 17-1729-A (a).

School Law.[15]

Charter schools are funded by subsidies from the school district in which the students of the charter school reside. A school district is obligated to forward funds for all students enrolled in a charter school, including special education students, as calculated under a formula prescribed by law.[16] The Secretary of Pennsylvania's Department of Education, upon a charter school's notification and documentation of outstanding payments, has a mandatory, non-discretionary duty to "deduct the estimated amount, as documented by the charter school, from any and all State payments made to the district after receipt of documentation from the charter school."[17]

In December 2001, the Secretary of Education of the Commonwealth of Pennsylvania declared the School District of Philadelphia to be a distressed school district and, pursuant to 24 P.S. § 6-696, the School Reform Commission was established. The SRC assumed all the powers and duties of the Philadelphia School District including the Philadelphia School District's obligations to Charter Schools, such as revoking or suspending charters pursuant to 24 P.S. § 1729-A.

In the *case sub judice,* the center of the dispute concerns the SRC's authority to pass resolutions suspending the Charter School Law as it pertains to enrollment caps and funding requirements. The Commonwealth Court and the General Assembly have already determined that unilateral caps may not be imposed on charter schools. In *Foreman*

---

15. See *W. Chester Area Sch. Dist. v. Collegium Charter Sch.,* 571 Pa. 503, 520, 812 A.2d 1172, 1182 n. 17. (2002).
16. 24 P.S. § 17-1725-A(a)(2)-(3).
17. 24 P.S. § 17-1725-A(a)(2)-(3).

*v. Chester-Upland School District*[18], the Chester-Upland School District Empowerment Board of Control appealed from an order of the Delaware County Court of Common Pleas holding that the Empowerment Board did not have the authority, under the Education Empowerment Act[19], to enact enrollment resolutions placing limits on the number of students that could attend charter schools. The Commonwealth Court affirmed the holding of the trial court. The Commonwealth Court reasoned that in the context of the Charter School Law, a charter is not a contract, but a grant of power for the board of directors of that school to establish a school to provide public education to school-age children and concluded that the Empowerment Board did not have authority pursuant § 693 (1) of the Public School Code to limit charter school enrollment.[20]

The General Assembly has also spoken on the issue of enrollment caps. While Supreme Court review was pending in *Foreman*, the Pennsylvania General Assembly adopted Act 61. Act 61 modified § 17-1723-A of the Charter School Law by adding the following section:

(d) (1) Enrollment of students in a charter school or cyber charter school shall not be subject to a cap or otherwise limited by any past or future action of a board

18. 941 A.2d 108 (Pa. Cmwlth Ct. 2008).

19. The Chester School District was initially being managed by a Special Board of Control as a result of the School Board's financial distress as determined in 1994 by the Secretary of Education. Pursuant to § 1705-B(h)(1) of the Education Empowerment Act, "A school district under a declaration of distress pursuant to 24 P.S. § 6-692 and certified as an education empowerment district shall be operated by a special board of control established under Section 692. A board of control established under this section shall be abolished upon the appointment of a special board of control under Section 692."

20. *Foreman v. Chester-Upland Sch. Dist.*, 941 A.2d 108, 116 (Pa. Cmwlth. Ct. 2008).

of school directors, a board of control established under Article XVII-B, a special board of control established under section 692 or any other governing authority, unless agreed to by the charter school or cyber charter school as part of a written charter pursuant to section 1720-A.

(2) The provision of this subsection shall apply to a charter school or cyber charter school regardless of whether the charter was approved prior to or is approved subsequent to the effective date of this subsection.

Act 61 unequivocally and in plain language states that enrollment of students in charter schools may not be subject to a cap or limited by any past or future action of a board of school directors or any other governing authority unless agreed to by the charter schools as part of a written charter.[21]

In *School Dist. of Philadelphia v. Department of Educ.*[22], the Commonwealth Court was asked to invalidate a unilateral enrollment cap imposed on a charter school by the School District of Philadelphia.[23] In reaching its decision, the Court invalidated the enrollment cap based on Act 61 giving deference to the Secretary's findings that the charter school did not agree to the enrollment cap and that a unilateral action does not constitute an agreement.[24]

Notwithstanding the holdings of *Foreman and*

---

21. The appeal before the Supreme Court was withdrawn after the passage of Act 61.

22. 41 A.3d 222 (2012).

23. The charter school involved the School District case was Walter D. Palmer Leadership Learning Partners Charter School, one of the plaintiffs here.

24. The Supreme Court of Pennsylvania heard argument on March 11, 2014.

*School Dist. of Philadelphia v. Department of Educ.* and the passage of Act 61, defendants now argue that the School District is not required to obtain the agreement of the charter schools to an enrollment cap because it is a distressed school district as defined by the Distressed School Law. This court finds that the SRC does not have the authority to suspend application of Act 61 or the funding requirements[25] of the Charter School Law under the authority of the Distressed School Law.

As discussed above, the School District of Philadelphia was declared to be financially distressed on December 21, 2001.[26] Pursuant to the terms of the Distressed School Law, when a school district of the first class is declared in distress, the General Assembly mandates appointment of a School Reform Commission and bestows upon the Commission various duties and responsibilities regarding operation, management, education as well as financial matters of the district. The Distressed School Law, however, does not give the SRC unbridled power to overrule the law making authority of the General Assembly and suspend applicable statutes such as Act 61 and funding requirements for Charter Schools, based solely on its declaration of necessity. Indeed the General Assembly

25. The SRC's August 2013 Resolution suspended select funding requirements found in § 17-1725-A of the Charter School Law. The SRC purported to absolve the School District of the statutory obligation to fund all resident students attending charter schools and to divest charter schools of the statutory right to seek redirection of funding from the Pennsylvania Department of Education. Section 17-1725-A provides the statutory funding scheme for non special education students and for special education students. It also provides for seven categories of deductions to be made and provides a remedy for a school district's noncompliance with the Charter School Law. For the reasons discussed *infra*, the SRC does not have the authority to suspend this requirement.

26. To be financially distressed 24 P.S. § 6-691 describes seven enumerated conditions which must be met and following a proper investigation by the Secretary a certificate of distress is issued.

may delegate authority and discretion in connection with the execution and administration of a law; however the delegation and discretion in connection with the execution and administration must occur within certain parameters.

As authority to suspend application of Act 61 and the funding requirements under the Charter School Law, defendants rely upon 24 Pa. C.S. §696 (i) which provides:

> (i) In addition to all powers granted to the superintendent by law and a special board of control under Section 693 and notwithstanding any other law to the contrary, the School Reform Commission shall have the following powers: ...

> (ii) All applications to operate a charter school in a school year after a declaration of distress is issued and all charter schools established after a declaration of distress is issued shall not be subject to Section 1717-A (b), (c), (d), (e), (f), (g), (h) and (1), 1722-A (C) and 1724-A.

> (iii) The School Reform Commission may suspend or revoke a charter pursuant to Section 1729 A.

> (3) To suspend the requirements of this act and regulations of the State Board of Education except that the school district shall remain subject to those provisions of this act set forth in Sections 1073, 1073.1, 1076, 1077, 1078, 1080, 1732-A(a), (b) and (c), 1714-B and 2104 and regulations under those sections.

> (9) To reallocate resources, amend school procedures, develop achievement plans and implement testing or other evaluation procedures for educational purposes.

Utilizing these provisions, the SRC suspended the

funding requirements of the Charter School Law based on its power to reallocate resources outside the School District which may affect or are related to the School District's finances. The SRC also suspended application of Act 61 so that the SRC may limit the amount of funds it must allocate to charter schools so it may protect the District from further threats to its financial health. This court finds the defendants' interpretation of its authority under the Distressed School Law to be overly expansive and not contemplated by the General Assembly.

The Constitution of this Commonwealth, in Article II, § 1, provides: "The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives." Legislative power had been described as the power to incur public debts, levy or collect taxes or make laws.[27] Only the General Assembly may make laws and cannot constitutionally delegate the power to make law to any other branch of government or any other body or authority.[28]

Although the General Assembly may not delegate its law making power, it may delegate authority and discretion in connection with the execution and administration of a law.[29]

[T]o do so, it must establish primary standards and impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions of the enabling legislation.... [T]he principal limitations on the General Assembly's power to delegate

27. *Scuoteguazza v. Dep't of Transp.,* 41 Pa. Cmwlth. 534, 399 A.2d 1155, 1157(1979).

28. *Ass'n of Settlement Companies v. Department of Banking,* 977 A.2d 1257, 1265 (Pa. Cmwlth Ct. 2009).

29. *Id.*

such authority are twofold: (1) the basic policy choices must be made by the Legislature; and (2) the legislation must contain adequate standards which will guide and restrain the exercise of the delegated administrative functions.[30]

Here, the General Assembly delegated to the SRC the execution and administrative authority over the School District through its passage of the Distressed School Law. The General Assembly, however, remained in control over the basic policy choices and standards to guide and restrain the exercise of those functions delegated to the SRC. The passage of Act 61 is the General Assembly's basic policy choice to prohibit the SRC from subjecting a charter school to an enrollment cap unless agreed to by the charter school as part of a written charter. Although the General Assembly gave the SRC the authority to "reallocate resources" and to "suspend the requirements of the [Public School Law]", the passage of Act 61 in 2008 emphasized the General Assembly's significant policy choice to provide parents and pupils with expanded choices in the types of educational opportunities that are available to them within the public school system and to allow the charter schools to remain independent. Additionally, Act 61 also provided a standard to guide the SRC in the exercise of its function to ensure the basic policy choice of the General Assembly was being met by requiring an agreement to an enrollment cap. This court clearly recognizes and understands the severe conditions which exist in the Philadelphia School District at present. Nevertheless, the SRC did not have the authority to suspend Act 61 and the funding requirement under the

---

30. *Pennsylvania Builders Ass'n v. Dep't of Labor & Indus.*, 4 A.3d 215, 224 (Pa. Cmwlth. Ct. 2010).

Charter School Law. Consequently, the November 2012 and August 2013 Resolutions are invalid.

Defendants' reliance on the Distressed School Law for its authority to suspend the requirements of the Charter School Law is also contrary to the tenets of statutory construction. As with all questions of statutory interpretation, the object is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statute under review.[31] Generally, the best indication of legislative intent is the statute's plain language.[32] The plain language of each section of a statute must be read in conjunction with one another, construed with reference to the entire statute.[33] A presumption exists that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable, and that the General Assembly intends the entire statute to be effective and certain.[34] Moreover, the General Assembly does not intend to violate the constitution or favor the public interest over the private.[35] Additionally, whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision.[36]

Applying the foregoing principles to the case at hand, it

31. 1 Pa.C.S. § 1921(a).
32. *Malt Beverages Distributors Ass'n v. Pennsylvania Liquor Control Bd*, 601 Pa. 449, 974 A.2d 1144, 1149 (2009).
33. *E.D.B. v. Clair*, 605 Pa. 73, 987 A.2d 681, 684 (2009).
34. 1 Pa.C.S. § 1922(1), (2).
35. *Id.* § 1922 (3) & (5).
36. *Id.* § 1933.

is clear that Act 61 and the funding requirements under the Charter School Law are specific provisions which prevail over the general provisions of the Distressed School Law. Section 696 (i)(3) gives the SRC broad authority to suspend application of certain requirements of the Public School Code. The suspension authority in 696 (i)(3), however, does not extend to Act 61. Act 61 expressly directs school boards and all governing authorities of school districts in distress, including the SRC to not cap enrollment for charter schools unless agreed to by the charter school. Act 61 was recently enacted as a result of litigation between a charter school and a distressed school district because to give the SRC the authority to suspend application of Act 61 as a result of the school district's distressed status would create an absurd result which was not contemplated by the General Assembly. The General Assembly intended distressed school districts to be subject to Act 61 as evidenced by the statute's reference to the various governing authorities created for the benefit of distressed school district.

Furthermore, permitting the SRC to suspend Act 61 is unreasonable. The Distressed School Law was added to the Public School Law on April 27, 1998. Act 61 was added to section 1723-A on July 9, 2008. At the time the General Assembly added Act 61, the SRC was already in place and the School District of Philadelphia had been declared in "distress" for eight years. The General Assembly did not enact Act 61 without taking into consideration the distressed status of the school districts within the Commonwealth of Pennsylvania including the Philadelphia School District and their statutorily created governing bodies. Taking the foregoing into consideration, the court finds that the General Assembly did not intend for Act 61's requirements to be suspended by the SRC.

The Charter Schools also argue that certain conditions set forth within the proposed charters violate the Charter School Law. The Charter School Law implicitly recognizes that conditions may be placed on the grant of a charter, however such conditions must be consistent with the statutory provisions. To hold to the contrary would defeat the Charter School Law's stated purpose to operate charter schools independently and free from excessive regulation. Although the Charter School Law implicitly recognizes that conditions may be placed on the grant of a charter, such conditions must be consistent with the statutory provisions contained within the Charter School Law and they must be reasonable. Here, the court finds that the conditions imposed by the SRC on the charter schools regarding Curriculum and Assessment of Charter School Student Performance, Employment of Personnel, Contents of Annual Report, Utilization of Computer System and Access to Information and Documentation are either contained within the Charter School Law or are reasonable conditions. However, the conditions concerning the Charter School's responsibility to maintain insurance coverage and modification on the Charter School's ability to collect unpaid withholdings from Secretary of Education are contrary to the Charter School Law and are unreasonable. To permit the latter two conditions to stand would defeat the General Assembly's stated purpose to operate charter schools independently and free from excessive regulation.[37]

37. *W. Chester Areas Sch. Dist. v. Collegium Charter Sch.*, 571 Pa. 503, 812 A.2d 1172, 1182 n. 17 (2002). *See* 24 P.S. § 17-1701-A. (stating that the General Assembly intends for charter schools to operate independently from the existing school district structure); 24 P.S. § 17-1715-A.(1) (stating, except as otherwise provided in this article, charter schools are exempt from statutory requirements established in the act, from regulations of the State board and the standards of the secretary not specifically applicable to charter schools).

## CONCLUSION

Based on the foregoing, Plaintiffs Motions for Summary Judgment are granted part and denied in part as follows:

1. The November 2012 and the August 2013 Resolutions suspending Act 61 and the funding requirements of the Charter School Law are invalid.

2. The conditions set forth within the proposed charters regarding the Charter Schools remedy in seeking outstanding funding and maintenance of insurance are contrary to the Charter School Law and are unreasonable. All other conditions within the proposed charters are not contrary to the Charter School Law and are reasonable.

## ORDER

And now, this 21st day of April 2014, upon consideration of plaintiffs' motions for summary judgment, defendants' responses in opposition and in accord with the attached memorandum opinion, it hereby is ordered that that the motions are granted in part and denied in part as follows:

1. The November 2012 and the August 2013 Resolutions suspending Act 61 and the funding requirements of the Charter School Law are invalid.

2. The conditions set forth within the proposed charters regarding remedy in seeking outstanding funding and maintenance of insurance are contrary to the Charter School Law and are unreasonable. All other conditions within the proposed charters are not contrary to the Charter School Law and are reasonable.