## MONTESSORI REGIONAL CHARTER SCHOOL

v.

## MILLCREEK TOWNSHIP SCHOOL DISTRICT and School District of the City of Erie, Appellants.

Commonwealth Court of Pennsylvania.

Argued June 6, 2012.

Decided Oct. 26, 2012.

---

Timothy S. Wachter, Erie, for appellants.

Thomas A. Pendleton, Erie, for appellee.

Before PELLEGRINI, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge LEAVITT.

Millcreek Township School District (Millcreek) and the School District of the

City of Erie (Erie) (collectively, School Districts) appeal an order of the Court of Common Pleas of Erie County (trial court) that granted the request of Montessori Regional Charter School (Montessori) to amend its charter to operate at a second location. In this case we consider whether the trial court properly exercised jurisdiction over the School District's decisions on Montessori's request and, if so, whether the trial court erred in approving the charter amendment. We affirm.

On February 11, 2004, the State Charter School Appeal Board (CAB) granted a charter[1] to Montessori to operate a regional charter school within the Erie and Millcreek School Districts at 2910 Sterrettania Road in Millcreek Township. The charter was for a five-year term and was set to expire on June 30, 2009. In September 2008, Montessori notified the School Districts of its intention to renew its charter for an additional five-year term. By letter dated October 9, 2008, Millcreek requested additional information from Montessori with respect to its renewal request, including a copy of all capital improvement plans.

On November 21, 2008, Montessori sent a binder of materials to the School Districts to respond to Millcreek's request. In response to Millcreek's inquiry about capital improvements, Montessori advised the School Districts:

> The Charter School currently has full enrollment and also has a waiting list of more than 130 students. Therefore, the trustees are early in the process of reviewing the Charter School's options regarding its current facility. These options include renovating the current building, leasing a second building or constructing a new building.

Reproduced Record at 562a (R.R. ___).

According to Montessori, its current building was formerly a Millcreek public school constructed in the 1930's with additions constructed in the 1950's and 1960's. With just over 200 students, the current building is at enrollment capacity. An architect's report prepared at the request of the School Districts in January 2009 identified several problems that will necessitate either substantial renovations to the current building or construction of a new building: small classrooms with outdated lighting and equipment; lack of sprinklers in many areas; energy inefficient windows; office areas and restrooms that are not easily accessible for persons with disabilities; and lack of a functioning cafeteria. R.R. 567a.

On March 20, 2009, Montessori signed a lease with the Diocese of the City of Erie for the use of the former St. Andrew's School in Erie as a second charter school facility. Montessori refers to the St. Andrew's facility as its "North Campus." Millcreek had itself previously used the St. Andrew's School to house students while one of its middle schools was being reno-

---

1. Section 1717–A(i)(9) of the Charter School Law, Act of March 10, 1949, P.L. 30, *as amended,* added by Section 1 of the Act of June 19, 1997, P.L. 225, provides a mechanism for the CAB to execute a charter where a school district fails to do so following a decision by the CAB in favor of a charter school applicant. It states:

> A decision of the [CAB] to reverse the decision of the local board of directors shall serve as a requirement for the local board of directors of a school district or school districts, as appropriate, to grant the application and sign the written charter of the charter school as provided for in section 1720–A. Should the local board of directors fail to grant the application and sign the charter within ten (10) days of notice of the reversal of the decision of the local board of directors, the charter shall be deemed to be approved and shall be signed by the chairman of the [CAB].

24 P.S. § 17–1717–A(i)(9).

vated. Additionally, Perseus House Charter School had signed a lease for the St. Andrew's School but, ultimately, chose not to use the location.

On March 23, 2009, Montessori supplemented its November 21, 2008, submission to the School Districts with a copy of the executed lease with the Diocese and a statement of Montessori's intent to amend its charter to add the second facility. Montessori's plan in opening the North Campus is to provide the space it needs to increase its total enrollment to 400 students. Montessori will operate both campuses until a new facility can be built to accommodate all of its students, most likely at its current location at 2910 Sterrettania Road. By immediately increasing its enrollment, Montessori will qualify for financing through The Reinvestment Fund, an organization that makes construction loans available to charter schools with 400 or more students.

On March 25, 2009, the School Districts held a joint public hearing for the purpose of considering Montessori's application to renew and amend its charter. The School Districts requested additional information, which Montessori supplied on April 30, 2009. The supplemental information pertained to: (1) special education enrollment; (2) enrollment of students at Montessori's proposed North Campus; (3) financial projections of additional revenue and additional expenses under three different classroom configurations at the North Campus; and (4) a PowerPoint presentation describing Montessori's use of the North Campus

during the renewal period in order to have sufficient enrollment to qualify for construction financing.

On June 29, 2009, Erie granted renewal of Montessori's charter but requested more documentation on the proposed charter amendment. In doing so, Erie treated the enrollment expansion and addition of the North Campus as an application for a new charter; the additional information it sought mirrored the requirements for a new charter application in the Charter School Law.[2] Erie also found that Montessori proposed "to create a new school as a tactic to qualify for financing for a new building through the Reinvestment Fund." R.R. 30a. For these reasons, Erie deferred a determination on the proposed North Campus until Montessori provided documentation required for new charter schools under Sections 1717–A and 1719–A of the Charter School Law, 24 P.S. §§ 17–1717–A, 17–1719–A. Notably, Erie raised no concerns about the suitability of the St. Andrew's facility as a school.

Millcreek also granted renewal of Montessori's charter,[3] but denied the proposed amendment. Millcreek's one-sentence decision offered no explanation of its reasoning.

Montessori appealed the School Districts' decisions on its proposed amendment to the trial court and to the CAB.[4] On November 24, 2009, the CAB denied the appeal, ruling that it had no jurisdiction over charter amendments.[5] The School Districts moved to dismiss Montessori's trial court appeal, arguing that the

---

2. Act of March 10, 1949, P.L. 30, *as amended,* added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17–1701–A—17–1751–A.

3. Millcreek initially denied renewal of Montessori's charter but later granted renewal upon reconsideration.

4. The School Districts sent a new charter to Montessori effective from July 9, 2009, to June 30, 2014. However, according to the trial court, Montessori has not yet executed a charter.

5. Montessori appealed the CAB's decision to this Court but later withdrew its appeal.

court lacked jurisdiction over Millcreek's decision to deny the amendment and Erie's decision to defer action. Because the CAB had declined to act on Montessori's appeal and there was no other way for Montessori to proceed, the trial court overruled the School District's preliminary objections and held that it had jurisdiction.

On the merits, the trial court rejected the School Districts' argument that Montessori's request to expand to a new building constituted a new charter application, rather than a request to amend the original charter. The trial court held that the School Districts arbitrarily and unreasonably denied, or deferred a decision on, Montessori's request to amend its charter. With respect to Erie's deferral pending the submission of additional information, the trial court pointed out that Erie had granted a charter amendment to Perseus House to operate a second school without requiring the information it later requested from Montessori. The School Districts now appeal the trial court's order granting Montessori's request to amend its charter to open the North Campus.

On appeal, the School Districts raise three issues. First, they argue that the trial court lacked jurisdiction over their respective decisions on Montessori's request to amend its charter. Second, the School Districts contend that the trial

court erred in finding that they acted arbitrarily and capriciously in denying or deferring a decision on Montessori's amendment request. Third, the School Districts argue that the trial court erred in finding that the St. Andrew's School facility satisfied the requirements of the Charter School Law pertaining to health and safety regulations.

■ The School Districts first argue that the trial court lacked jurisdiction over their respective decisions on Montessori's request to amend its charter. In a companion case also decided today, this Court holds that the CAB exercises jurisdiction over appeals of adverse decisions on proposed charter amendments. *Northside Urban Pathways Charter School v. State Charter School Appeal Board (Pittsburgh Public School District)*, 56 A.3d 80, 2012 WL 5286126 (Pa.Cmwlth.2012). Of course, the trial court in this case did not have the benefit of *Northside*. Faced with the jurisdictional issue, the court acknowledged that the only other tribunal that could possibly review the matter, the CAB, had declined jurisdiction.

■ Given these circumstances, the trial court's decision to exercise jurisdiction over Montessori's appeal was proper under the Local Agency Law, 2 Pa.C.S. §§ 551–555, 751–754.[6] Sections 751–754 of the

---

**6.** We note that our affirmance of the trial court's exercise of jurisdiction in this case is *sui generis*. Going forward, the rule established in *Northside* will apply and the CAB will exercise jurisdiction over disputes arising from charter amendment applications. Prospective application of our decision in this case is also in accord with *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), which the courts of this Commonwealth follow in determining whether a decision should apply retroactively. *See McCue v. State Employes' Retirement Board*, 138 Pa. Cmwlth. 300, 588 A.2d 980, 981 (1991) (citing *August v. Stasak*, 492 Pa. 550, 554, 424 A.2d 1328, 1330 (1981)). In *Chevron*, the United

States Supreme Court identified criteria for determining whether a decision will be prospectively applied:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have

Local Agency Law provide for judicial review of local agency adjudications, even where the statute conferring a right expressly states that the agency's adjudication is final or conclusive, or not subject to review. The Local Agency Law provides the default method for providing due process where a local agency's determination affects the property rights of an interested party.

■ The School Districts argue that their decisions were not "adjudications" for purposes of the Local Agency Law. We disagree. Section 101 of the Local Agency Law defines "adjudication" as

[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

2 Pa.C.S. § 101. When an agency's decision or refusal to act leaves a complainant with no other forum in which to assert his or her rights, privileges or immunities, the agency's act is an adjudication. *Wortman v. Philadelphia Commission on Human Relations*, 139 Pa.Cmwlth. 616, 591 A.2d 331, 333 (1991).

Applying the foregoing principles, we conclude that the School Districts' decisions were adjudications. Both decisions

affected Montessori's property right in its charter, which this Court has held is akin to a regulatory permit. *Foreman v. Chester–Upland School District*, 941 A.2d 108, 115 (Pa.Cmwlth.2008).[7] *See also Philadelphia Entertainment and Development Partners, L.P. v. Pennsylvania Gaming Control Board*, 34 A.3d 261, 276 (Pa.Cmwlth.2011) (noting that "[g]overnment licenses to engage in a business or occupation create an entitlement to partake of a profitable activity, and therefore, are property rights.") (citation omitted). Millcreek's outright denial of Montessori's amendment request "affected" its property right to operate a charter school capable of accommodating all of its current and prospective pupils. So, too, did Erie's deferral, because it was premised on Erie's treatment of Montessori's renewal and amendment application as one for a new charter. By requiring Montessori to apply for a new charter and comply with the extensive requirements in Sections 1717–A and 1719–A of the Charter School Law, Erie not only forced Montessori to jump through many unnecessary hoops, it effectively foreclosed the use of an amendment as a vehicle to expand Montessori's physical operation.[8]

■ Turning to the merits, the School Districts argue that the trial court erred in holding that they acted arbitrarily and ca-

weighed the inequity imposed by retroactive application, for "[w]here a decision ... could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." (citations omitted).
*Chevron*, 404 U.S. at 106–07, 92 S.Ct. 349. The present case establishes a new rule of law regarding the CAB's jurisdiction over charter amendment disputes. This is an issue of first impression whose resolution was not clearly foreshadowed by any other court decisions. It would also be inequitable, and a waste of

judicial resources already expended, to transfer this matter to the CAB for a hearing on issues already decided by an Article V judge. *See* n. 9, *infra*.

7. A petition for allowance of appeal was granted in *Foreman*, 597 Pa. 235, 951 A.2d 264 (2008), but discontinued by praecipe on August 11, 2008.

8. See *Northside Urban Pathways Charter School v. State Charter School Appeal Board (Pittsburgh Public School District)*, 54 A.3d 445 (Pa.Cmwlth.2012), for a complete discussion of why a charter is an amendable license.

priciously in denying or deferring a decision on Montessori's amendment request.[9] Based upon what they perceive as a lack of information from Montessori on its proposed operations at the St. Andrew's facility, the School Districts assert that they acted within their discretion under the Charter School Law, which is silent on the subject of charter amendments. Further, in their third issue on appeal, the School Districts argue that the trial court erred in determining that Montessori's proposed North Campus satisfied the requirements of the Charter School Law pertaining to health and safety of a charter school's pupils.[10] It contends that the record is inadequate on that issue.[11]

This Court's decision in *Central Dauphin School District v. Founding Coalition of the Infinity Charter School*, 847 A.2d 195 (Pa.Cmwlth.), *appeal denied*, 580 Pa. 707, 860 A.2d 491 (2004), is instructive on the issues related to the suitability of the St. Andrew's facility. In *Central Dauphin*, the CAB reversed the school district's denial of a new charter school application, which included only the address and a physical description of the proposed site. On appeal, the school district argued that the CAB erred because, *inter alia*, the charter school had failed to provide substantial evidence that it had an appropriate physical facility for its program. The school district argued that the charter school failed to provide information on the dimensions of its classrooms; lavatory facilities; fire exits; handicapped accessibility; or heating, ventilation, air conditioning and electrical service. The school district also objected to the proposed facility's lack of a cafeteria or multi-purpose room, physical education area and nurse's office.

9. We will not remand this matter for transfer to the CAB for several reasons. The School Districts have asked this Court to reverse the trial court's order because they believe their refusal to approve a charter amendment is non-reviewable, by any tribunal. They have not requested a new hearing or a transfer to the CAB to determine whether the St. Andrew's School building was a good choice for Montessori's proposed expansion. Had a hearing never taken place, a transfer to the CAB to decide the merits of Montessori's proposed charter amendment would have been appropriate. However, there has been a hearing, and it was conducted by an Article V judge. A transfer would effectively place that judge's findings under the review of an administrative tribunal. Such an outcome would reverse the order of review prescribed by the Administrative Agency Law, the Local Agency Law and the Pennsylvania Constitution: review of administrative determinations must be done by a court of record. *See* Pa. Const., art. V, § 9 (providing that "[t]here shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal ... from an administrative agency to a court of record or to an appellate court....''). Notably, at the hearing before the Article V judge, the School Districts did not make an evidentiary case that the St. Andrew's School building was inadequate in any way, nor did they return Montessori's amendment application as incomplete with respect to information about the new building. Effectively, the School Districts waived their ability to obtain a new hearing on the suitability of the St. Andrew's School building.

10. The School Districts cite Section 1722–A(b) of the Charter School Law, which states that a "charter school facility shall be exempt from public school facility regulations except those pertaining to the health or safety of the pupils." 24 P.S. § 17–1722–A(b).

11. The School Districts also contend that the trial court erred by comparing Erie's relationship with Montessori to Erie's relationship with Perseus House Charter School. The trial court concluded that Erie acted arbitrarily and capriciously toward Montessori because it showed favoritism to Perseus House by accommodating nearly all of its requests and allowing it to operate at a new location before filing a charter renewal application and holding a public hearing. We agree with the School Districts that Erie's relationship and dealings with Perseus House are irrelevant to the instant matter.

We agreed with the CAB that the school district demanded more information than the Charter School Law requires. Section 1719–A(11) of the Charter School Law provides, in relevant part, that an application to establish a charter school shall include:

> A description of and address of the physical facility in which the charter school will be located and the ownership thereof and any lease arrangements.

24 P.S. § 17–1719–A(11). The Charter School Law did not require the charter school to provide the kind of detailed information on the proposed facility sought by the school district. Thus, we affirmed the CAB's determination that a simple description and address of the facility was sufficient.

In the present case, Montessori provided the School Districts with a copy of its lease for St. Andrew's. The lease states the name and address of the building and describes: the square footage of the portion of the building being rented; use of common areas and parking areas; and operating, maintenance and management expenses. R.R. 594a–597a. The lease also contemplates the renovations that will be necessary to secure telephone and internet service, add security measures consistent with a public school and install playground equipment. R.R. 596a. Based upon all of the foregoing information, which goes well beyond the requirements of the Charter School Law, the trial court did not err in finding that the St. Andrew's School was a suitable facility for Montessori's proposed North Campus.

Moreover, it bears noting that the School Districts' concerns with the suitability of the St. Andrew's school are belied by their actions throughout this protracted litigation. Montessori points out in its brief that St. Andrew's was available for inspection beginning in March 2009, however the School Districts did not avail themselves of this opportunity before issuing their adjudications on June 29, 2009, or before the trial court accepted supplemental evidence in October 2009. We echo the trial court's observation that "there has been more than sufficient time (i.e. during the course of this litigation) for [the School Districts] to visit [St. Andrew's] and determine its suitability for [Montessori]." Trial Court Opinion at 12. Any lack of a record on the adequacy of St. Andrew's as a school facility is of the School Districts' own making; they never even returned Montessori's application to it for more information about the building. *Cf. Community Service Leadership Development Charter School v. Pittsburgh School District,* 34 A.3d 919 (Pa.Cmwlth.2012) (holding that CAB must specifically articulate any deficiencies in charter school's application so charter school can address deficiencies in amended or new application).

For all of the foregoing reasons, we affirm the order of the trial court.

Judge SIMPSON concurs in the result only.

### ORDER

AND NOW, this 26th day of October, 2012, the order of the Court of Common Pleas of Erie County in the above-captioned matter, dated February 14, 2011, is AFFIRMED.

CONCURRING AND DISSENTING OPINION by President Judge PELLEGRINI.

While I agree with the majority that the Court of Common Pleas of Erie County (trial court) properly exercised jurisdiction

over this matter as an appeal of the adjudication of a local agency,[1] I respectfully dissent because the Charter School Law (CSL)[2] does not empower Montessori Regional Charter School (Montessori) to amend its charter to operate its regional charter school[3] at more than one facility or empower the Erie and Millcreek School Districts (Districts) to permit a Montessori to operate its regional charter school at two separate locations or facilities.

In this case, the CAB granted Montessori's charter application[4] to operate a regional charter school within the Districts in a building in Millcreek Township that was formerly a Millcreek public school. Montessori now seeks to amend its charter to open a separate second location for the same regional charter school in a facility that it has leased from the Erie Catholic Diocese, the former St. Andrew's School in Erie. The stated purpose of the second facility is to increase Montessori's total enrollment to 400 students. Because the CSL does not empower Montessori to amend its existing charter to operate its

1. 2 Pa.C.S. §§ 101, 752; 42 Pa.C.S. § 933(a)(2). *See generally Merrell v. Chartiers Valley School District*, 579 Pa. 97, 103 n. 4, 855 A.2d 713, 716 n. 4 (2004) ("We note that we have previously determined that a School District along with its Board is a local agency pursuant to the Local Agency Law.") (citation omitted). While I also dissent from the majority's determination that the State Charter Appeal Board (CAB) possesses jurisdiction over disputes arising from charter amendment applications, the majority now takes the untenable position that allows the trial court decision to stand, even though it finds that it does not have jurisdiction. It does so because it finds that this matter should not be remanded to the trial court for transfer to CAB to resolve the dispute because the trial court initially exercised jurisdiction. However, it is well settled that "[l]ack of subject matter jurisdiction of a court or administrative tribunal to act in a matter is an issue that neither can be waived by the parties, nor can the parties confer subject matter jurisdiction on a court or tribunal by agreement or stipulation." *City of Pittsburgh v. Silver*, 50 A.3d 296, 299 n. 9 (Pa.Cmwlth.2012) (citation omitted). That holds true for a court which also cannot confer jurisdiction. Again, while I would hold that the trial court properly exercised jurisdiction over this matter, if the CAB possesses jurisdiction as the majority asserts, then the trial court never had jurisdiction and the majority has no choice but to vacate the decision below and transfer to the CAB.

2. Act of March 10, 1949, P.L. 30, *added by* the Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. §§ 17–1701–A—17–1751–A.

3. Regarding the creation of a regional charter school, Section 1718(a) and (b) of the CSL, 24 P.S. § 17–1718–A(a), (b), states:

   (a) A regional charter school may be established by an individual, one or more teachers who will teach at the proposed charter school; parents or guardians of students who will attend the charter school; any nonsectarian college, university or museum located in this Commonwealth; any nonsectarian corporation not-for-profit, as defined in 15 Pa.C.S. (relating to corporations and unincorporated associations); any corporation, association, or partnership; or any combination thereof. A regional charter school may be established by creating a new school or by converting an existing public school or a portion of an existing public school. Conversion of an existing public school to a regional charter school shall be accomplished in accordance with section 1714–A(b). . . .
   (b) The boards of school directors of one or more school districts may act jointly to receive and consider an application for a regional charter school, except that any action to approve an application for a charter or to sign a written charter of an applicant shall require an affirmative vote of a majority of all the directors of each of the school districts involved. The applicant shall apply for a charter to the board of directors of any school district in which the charter school will be located.

4. Section 1717–A(i)(9) of the CSL, 24 P.S. § 17–1717–A(i)(9), empowers the CAB to reverse a school district's decision denying a charter application and to grant the applica-

regional charter school at two separate locations or facilities, I dissent.

The CSL provides that a charter school may only be created by application to establish either a single district charter school under 24 P.S. § 17–1717–A or a multi-district regional charter school under 24 P.S. § 17–1718–A(a). Section 1719–A(11), 24 P.S. § 17–1719–A(11),[5] states that an application to establish a charter school must indicate the address and description of the physical facility in which the charter school will be located. Under 24 P.S. § 17–1720–A(a),[6] the specific terms

tion and sign the charter thereby creating the charter school.

5. 24 P.S. § 17–1719–A states:

An application to establish a charter school shall include all of the following information:

(1) The identification of the charter applicant.

(2) The name of the proposed charter school.

(3) The grade or age levels served by the school.

(4) The proposed governance structure of the charter school, including a description and method for the appointment or election of members of the board of trustees.

(5) The mission and education goals of the charter school, the curriculum to be offered and the methods of assessing whether students are meeting educational goals.

(6) The admission policy and criteria for evaluating the admission of students which shall comply with the requirements of section 1723–A.

(7) Procedures which will be used regarding the suspension or expulsion of pupils. Said procedures shall comply with section 1318.

(8) Information on the manner in which community groups will be involved in the charter school planning process.

(9) The financial plan for the charter school and the provisions which will be made for auditing the school under section 437.

(10) Procedures which shall be established to review complaints of parents regarding the operation of the charter school.

**(11) A description of and address of the physical facility in which the charter school will be located and the ownership thereof and any lease arrangements.**

(12) Information on the proposed school calendar for the charter school, including the length of the school day and school year consistent with the provisions of section 1502.

(13) The proposed faculty and a professional development plan for the faculty of a charter school.

(14) Whether any agreements have been entered into or plans developed with the local school district regarding participation of the charter school students in extracurricular activities within the school district. Notwithstanding any provision to the contrary, no school district of residence shall prohibit a student of a charter school from participating in any extracurricular activity of that school district of residence: Provided, That the student is able to fulfill all of the requirements of participation in such activity and the charter school does not provide the same extracurricular activity.

(15) A report of criminal history record, pursuant to section 111, for all individuals who shall have direct contact with students.

(16) An official clearance statement regarding child injury or abuse from the Department of Public Welfare as required by 23 Pa.C.S. Ch. 63 Subch. C.2 (relating to background checks for employment in schools) for all individuals who shall have direct contact with students.

(17) How the charter school will provide adequate liability and other appropriate insurance for the charter school, its employes and the board of trustees of the charter school. (Emphasis added.)

6. Section 1720–A, 24 P.S. § 17–1720–A, states, in pertinent part:

Upon approval of a charter application under section 1717–A, **a written charter shall be developed which shall contain the provisions of the charter application** and which shall be signed by the local board of school directors of a school district, by the local boards of school directors of a school district in the case of a regional charter school or by the chairman of the appeal board pursuant to section 1717–A(i)(5) and the board of trustees of the charter school. This written charter, when duly signed by the local board of school directors of a

of the Montessori's application, including the specific physical facility of its charter school,[7] were incorporated into Montessori's charter and became "legally binding" on both Montessori and the Districts. There is simply no provision in the CSL authorizing Montessori to create a separate charter school facility by mere amendment[8] to its charter without first submitting an application to the Districts.[9]

Accordingly, I would reverse the trial court's order.

school district, or by the local boards of school directors of a school district in the case of a regional charter school, and the charter school's board of trustees, shall act as legal authorization for the establishment of a charter school. This written charter shall be legally binding on both the local board of school directors of a school district and the charter school's board of trustees. **Except as otherwise provided in subsection (b), the charter shall be for a period of no less than three (3) nor more than five (5) years and may be renewed for five (5) year periods upon reauthorization by the local board of school directors of a school district or the appeal board**.... (Emphasis added.)

7. 24 P.S. § 17–1719–A(11).

8. This is not to say that a change of the facility cannot be considered when the

school's charter is up for renewal. 24 P.S. § 17–1720–A.

9. The only district that can allow a charter school to operate at more than one location under one charter is the School District of Philadelphia. Section 1722–A(d), 24 P.S. § 17–1722–A(d) states that "[n]otwithstanding any other provision of this act, a school district of the first class may, in its discretion, permit a charter school to operate its school at more than one location." In turn, Section 202 of the Public School Code of 1949, Act of March 13, 1949, P.L. 30, *as amended*, 24 P.S. § 2–202 states, in pertinent part, that "[e]ach school district having a population of one million (1,000,000), or more, shall be a school district of the first class...." Because the Districts are not first class school districts, they do not possess the discretion to permit Montessori to operate its charter school at more than one location or physical facility.