# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Valley Dual Language      :
Charter School,      :
           Petitioner      :
     :
       v.      :     No. 2010 C.D. 2013
     :
Bethlehem Area School District,      :     Argued: May 13, 2014
           Respondent      :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

**OPINION  BY**
**JUDGE COHN JUBELIRER**               **FILED: July 22, 2014**

Lehigh Valley Dual Language Charter School (Charter School) petitions for review of the October 15, 2013 Order of the State Charter School Appeal Board (CAB) that granted the Motion to Quash (Motion) of the Bethlehem Area School District (District) and dismissed Charter School's appeal from the District's denial of Charter School's request to amend its charter (Charter) to expand its existing operations to a second location. The CAB concluded that Charter School's appeal should be dismissed because, pursuant to the Charter School Law[1] (Law), Charter School is not permitted to operate two locations under the same Charter. However,

---

[1] Act of March 10, 1949, P.L. 30, added by Section 1 of the Act of June 19, 1997, P.L. 225, as amended, 24 P.S. §§ 17-1701-A – 17-1751-A.

we agree with Charter School that the CAB's conclusion that Charter School could not open a second location by amending its Charter is not in accordance with this Court's decisions in Montessori Regional Charter School v. Millcreek Township School District, 55 A.3d 196 (Pa. Cmwlth. 2012) (en banc) and Northside Urban Pathways Charter School v. State Charter School Appeal Board (Pittsburgh Public School District), 56 A.3d 80 (Pa. Cmwlth. 2012) (en banc), and, therefore, we reverse.

## I.    Background

The facts in this matter are not in dispute. Charter School currently operates a kindergarten through seventh grade school at a single location in Bethlehem, Pennsylvania pursuant to its Charter, which was issued by the District. In the Spring of 2013, Charter School and the District began discussing the renewal of the Charter. Both Charter School and the District agree that, during this period, there were discussions in which Charter School expressed its desire to open a second location for its fifth through seventh grade students. Charter School indicated that it wanted to add the second location because its present location lacked the "space to maintain [its] current student population" and to provide those "students a true middle school experience that is not possible in the elementary building." (An Administrative Evaluation and Recommendation of the Charter School Renewal Application of the Lehigh Valley Dual Language Charter School at 5, R.R. at 5a.) On March 18, 2013, the District's School Board (School Board) renewed the Charter for five years; there was nothing in the renewal addressing a second location. Thereafter, on or about June 5, 2013, Charter School officially advised the District and the School Board that it intended to expand into the second location and sought to amend the Charter accordingly. On June 24, 2013, Charter

2

School administrators met with the District's superintendent and assistant superintendent regarding the requested second location. Charter School entered into a lease agreement for its second location on July 1, 2013.

Charter School presented its proposed expansion to the School Board's Curriculum Committee on July 22, 2013 and, by letter dated August 9, 2013, Charter School advised the District of its position that there was nothing in the Law that prohibited it from operating at two locations. (Letter from Counsel for Charter School to District's Counsel (August 9, 2013), R.R. at 15a.) The School Board held a meeting on August 12, 2013 and voted to deny the amendment to the Charter because: (1) Section 1722-A of the Law, 24 P.S. § 17-1722-A, prohibits a charter school from operating out of more than one location; (2) the Charter prohibits Charter School from operating its school at a facility other than that listed in the Charter absent written consent from the District; and (3) of concerns regarding Charter School's educational achievement.

## II. Appeal to the CAB

Charter School appealed the District's denial of its amendment to the CAB, asserting that the Law does not prohibit it from operating in two locations, the District was estopped from raising any issues regarding educational concerns because such concerns were not raised during the Charter renewal process, and any educational concerns are irrelevant to whether Charter School can amend its Charter to open a second location. (Charter School's Appeal, R.R. at 16a-21a.) The District filed its Motion, arguing that: (1) because its denial of the amendment was essentially the denial of a new charter for the proposed second location, Charter School had to obtain a certain number of signatures before appealing the

denial under the Law and did not;[2] and (2) the Law prohibits, with one exception not applicable here, charter schools from operating out of two locations under the same charter. (District's Motion, R.R. at 22a; District's Brief in Support of Motion to Quash Appeal (District's Brief in Support), R.R. at 23a-26a.)

After both parties filed briefs, the CAB held a hearing during which it heard argument on the Motion. In their briefs and during the argument before the CAB, Charter School and District argued whether the Law, and this Court's decision in Montessori, permitted Charter School to operate a second campus by amending its original Charter. (Hr'g Tr. at 7-12, R.R. at 40a-45a; District's Brief in Support, R.R. at 23a-26a; Charter School's Brief in Opposition to District's Motion to Quash (Charter School's Brief in Opposition), R.R. at 28a-32a.) Charter School mentioned, in its argument to the CAB, that the question of whether the Law, Montessori, and/or Northside Urban Pathways had decided whether a charter school can, by amendment to its charter, obtain permission to operate a second location, went to the merits and "would be addressed at this body at a future date" if the appeal was permitted to go forward. (Hr'g Tr. at 12, R.R. at 45a.)

At the end of the hearing, the CAB voted to grant the Motion and dismiss Charter School's appeal on the grounds that "[t]here is nothing in the [Law] that supports the position that a charter school can open a second location via an amendment to its original charter." (Hr'g Tr. at 13, R.R. at 46a.) The CAB relied

_____

[2] Section 1717-A(h)(2), (5) of the Law requires that, before a charter school can appeal the denial of an *original charter* to the CAB, the charter school must obtain a certain number of signatures from those residing in the school district in which the charter school would be located and that a court of common pleas has to certify that the charter school complied with the signature requirement. 24 P.S. § 17-1717-A(h)(2), (5).

4

upon the concurring and dissenting opinion in <u>Montessori</u> to support its holding that the Law did not permit Charter School to open a second location by amending its Charter.  (CAB Decision at 3 n.2 (citing <u>Montessori</u>, 55 A.3d at 203-06 (Pellegrini, P.J., concurring and dissenting).)  The CAB further held that it was not bound by the majority in <u>Montessori</u> because the issue was not raised by the parties or addressed by this Court.  (Hr'g Tr. at 13-14, R.R. at 46a-47a; CAB Decision at 3.)  Charter School now petitions this Court for review.[3]

### III.  Appeal to this Court

This Court addressed the issue of whether a charter school can amend its existing charter to change the material terms contained therein, including the addition of a second location or school, in the companion cases of <u>Northside Urban Pathways</u> and <u>Montessori</u>.  These cases also involved the question of what entity had jurisdiction to consider appeals from the denial of amendment requests, the CAB or a court of common pleas.  <u>Northside Urban Pathways</u> and <u>Montessori</u> were argued on the same day before the same en banc panel, and the opinions were issued on the same day.

In <u>Northside Urban Pathways</u>, a charter school sought to amend its charter, which originally authorized it to operate a school for grades six through twelve, to open a second school that included kindergarten through grade five.  <u>Northside Urban Pathways</u>, 56 A.3d at 82.  The school district denied the amendment

---

[3] This Court's review of an order of the CAB is "limited to a determination of whether constitutional rights were violated, errors of law committed or whether the decision is not supported by substantial evidence."  <u>Community Service Leadership Development Charter School v. Pittsburgh School District</u>, 34 A.3d 919, 924 n.7 (Pa. Cmwlth. 2012).

application, indicating that because of the significance of the proposed changes the charter school was going to have to submit a new charter school application. Id. The charter school appealed to the CAB, but the CAB dismissed, on the school district's motion, for lack of jurisdiction. Id. at 82-83. The charter school appealed to our Court, arguing that the CAB erred in dismissing its appeal because the CAB had implied authority under the Law to consider the appeal from the denial of a proposed amendment of a charter. Id. at 83. This Court agreed and held that the CAB did have jurisdiction to consider such appeals under its implied authority to consider adverse decisions of local school boards to ensure review of "every significant decision that could be made by a school district with respect to a charter school." Id. at 85. Further, we affirmed the validity of a charter school changing the material terms of its charter through amendment under the Law, explaining:

> A charter school's application, which is ultimately incorporated into the terms of the charter, is a very detailed document . . . . *Inevitably, though, these details will have to be adjusted during the life of a school. Northside provides one instructive example. If a charter school states in its charter application that it will be located in a particular building, then that provision becomes part of the school's charter.* If the school changes its location during the term of the charter without amending its charter, it is subject to closure under Section 1729-A(a)(1) of the . . . Law, 24 P.S. § 17-1729-A(a)(1). *However, a charter school may not have any choice but to change its location.*
> . . . .
> [T]o hold, as [the school district] suggests, that charters cannot be amended as a matter of law runs contrary to the legislature's intent to offer parents and students a charter school alternative to the schools in their district.
> . . . .
> Further, as has been pointed out by the Department of Education, a single school cannot have two charters that expire on different days. This makes sense. *To deny the possibility of a charter amendment would be very limiting upon the charter school. It would*

*be bound to every item in its charter, such as school building location. To move to a new school building would require the charter school to set up a second corporation, obtain new funding, and form a new administration. This would make the . . . Law unwieldy. It would also place the [c]harter [s]chool in a Catch-22 because the Department of Education has decreed that a single school cannot have two charters.*

Id. at 85-87 (emphasis added). We acknowledged that charters are legally binding documents, but noted that "legally binding instruments such as licenses and contracts are capable of amendment, even with respect to material terms" and that the consequence of not permitting a charter school to amend its original charter would mean that charter schools could not make the "fundamental decision to amend the charter to allow the school to continue to operate." Id. at 86 & n.9. Accordingly, this Court reversed the CAB's decision and directed the CAB to review the charter school's amendment request to expand its grade levels and open a new location "in the same manner it would review a decision revoking or not renewing a charter." Id. at 87.

In Montessori a regional charter school sought to renew and amend its charter to permit it to open a second charter school facility to increase its enrollment capacity. Montessori, 55 A.3d at 198-99. After requesting additional information regarding the proposed second facility, the school districts approved the renewal, but one school district denied the requested amendment and the second school district deferred its decision pending the charter school's submission of additional information associated with a new charter. Id. at 199. The charter school appealed the school districts' decisions to the CAB and to the court of common pleas (trial court). Id. The CAB denied the appeal on the grounds that the Law was silent on the subject of charter amendments and, therefore, it did not have jurisdiction over charter amendments. The trial court held that it had

7

jurisdiction to consider the appeal, noting that the CAB had declined to act on the appeal. Id. at 199-200. The trial court: rejected the school districts' arguments that the request to expand into a new building should be considered a new application and not an amendment; held that the school districts arbitrarily and unreasonably denied/deferred action on the amendment; and directed the school districts to approve the amendment. Id. at 200. The school districts appealed to this Court. In affirming the trial court's order, we held that the trial court had jurisdiction, although such appeals would be heard by the CAB in the future, and that the trial court did not err in holding that the school districts' decisions were adjudications and were arbitrary and capricious. Id. at 200-03 & n.6. We specifically stated that the school districts could not treat the amendment application the same as an application for a new charter, which by forcing the school to "jump through many unnecessary hoops, it effectively foreclosed the use of an amendment as a vehicle to expand [the charter school's] physical operation." Id. at 201. Our opinion cited Northside Urban Pathways for "a complete discussion of why a charter is an amendable license." Id. at 201 n.8.

The school district in Northside Urban Pathways had asserted, *inter alia*, that a charter school could not, as a matter of law, amend its existing charter to open an additional school at a new location. Northside Urban Pathways, 56 A.3d at 86. This argument became the basis of President Judge Pellegrini's minority opinions in both Northside Urban Pathways and Montessori, in which he disagreed with the majorities' interpretation of the Law as permitting charter amendments. Id., 56 A.3d at 88, 90 (Pellegrini, P.J., dissenting); Montessori, 55 A.3d at 204 (Pellegrini, P.J., concurring and dissenting). He specifically disagreed that the Law could be interpreted to "authorize a charter school to amend its charter to create another

8

separate school at another location without first submitting a charter application for such a facility." Northside Urban Pathways, 56 A.3d at 87; see also Montessori, 55 A.3d at 204. The minority opinions further noted that, pursuant to Section 1722-A(d) of the Law, "[t]he only district that can allow a charter school to operate at more than one location under one charter is the School District of Philadelphia," which is the only first class school district in the state. Northside Urban Pathways, 56 A.3d at 90 n.12 (citing 24 P.S. § 17-1722-A(d)); Montessori, 55 A.3d at 206 n.9 (same).[4]

The parties and the CAB focus their analysis on the majority and minority opinions in Montessori because, in that case, our Court's holding did permit a charter amendment to add a second charter school facility in Erie for existing students. While the District is correct that the majority opinion in Montessori did not analyze the issue of whether a charter school could have more than one location under the Law, which was not raised by the school districts in that case, this Court was clearly aware of the issue as it was set forth in the concurring and dissenting opinion. The majority opinions in both Montessori and its companion, Northside Urban Pathways, did not adopt the position of the minority opinions, which would have interpreted the Law as not permitting charter amendments, and

---

[4] President Judge Pellegrini also disagreed that the CAB had jurisdiction over the denial of amendment requests because the Law specifically set forth the matters that fell within the CAB's jurisdiction, which did not include amendment requests. Northside Urban Pathways, 56 A.3d at 90-91 (Pellegrini, P.J., dissenting). He would have held that such denials would be appealable to a court of common pleas under Section 752 of the Local Agency Law, 2 Pa. C.S. § 752, Northside Urban Pathways, 56 A.3d at 91, and, therefore, he concurred with Montessori's holding that the court of common pleas had jurisdiction over the school districts' denial of the charter school's amendment request, Montessori, 55 A.3d at 203-04 (Pellegrini, P.J., concurring and dissenting).

specifically charter amendments related to operating at more than one facility. Accordingly, based on <u>Northside Urban Pathways</u> and <u>Montessori</u>, a charter school may amend the material details contained within its original charter, including changing a charter school's location or adding a second location of a charter school.[5] <u>Northside Urban Pathways</u>, 56 A.3d at 85-87 & n.9; <u>Montessori</u>, 55 A.3d at 201.[6]

Thus, <u>Northside Urban Pathways</u> and <u>Montessori</u> appeared to resolve the question of whether a charter school may add a second location via a charter amendment under the Law. However, the District nonetheless argues that, as referenced by the minority opinions in <u>Northside Urban Pathways</u> and <u>Montessori</u>, there is a section of the Law which it believes prohibits the addition of a second location by Charter School—Section 1722-A(d). Because the majority opinions in those cases did not explicitly discuss the effect of Section 1722-A(d), we will directly address this question now.

Section 1722-A(d) provides that, "[n]otwithstanding any other provision of this [Law], a school district of the first class may, in its discretion, permit a charter

---

[5] We note that Charter School is not seeking to expand, as the charter school did in <u>Northside Urban Pathways</u>, the grade levels it educates; it is only requesting to add a second location to which it will move its students in grades five through seven.

[6] We recently reiterated that a charter school may change the material terms in its charter via an amendment and that the failure to do so before implementing such changes may result in the closure of the school. <u>Career Connections Charter High School v. School District of Pittsburgh</u>, 91 A.3d 736, 743-44 (Pa. Cmwlth. 2014) (citing <u>Northside Urban Pathways</u> and stating, in an appeal from the non-renewal of a charter, that "[i]n order to change [the] terms [of the charter], [the charter school] was required to amend its charter" and "[b]ecause it changed [the terms of its charter] without doing so, [the charter school was] subject to closure").

10

school to operate its school at more than one location." 24 P.S. § 17-1722-A(d). District's argument is that, since the legislature specifically authorized Philadelphia School District, the only first class school district, to permit charter schools to operate at more than one location, the legislature intended that no other school districts could do so. The District also contends that proposed amendments to the Law would delete the phrase "in school districts of the first class" in Section 1722-A(d), which necessarily means that non-first class school districts do not presently have the authority to approve a charter school's request to operate at multiple locations. See Meier v. Maleski, 670 A.2d 755, 759 (Pa. Cmwlth. 1996) (stating "[a] change in the language of the statute ordinarily indicates a change in legislative intent"). Charter School, on the other hand, points out that the Law does not prohibit a charter school located outside of Philadelphia from operating at more than one location and that the Law contains numerous special provisions relating to the operation of charter schools in Philadelphia, of which this is only one.[7]

Thus, the question is whether a provision of the Law which is explicitly permissive is also impliedly prohibitive: does the authorization of one school district operate to prohibit all other school districts. Resolution of this question

[7] See Section 1720-A(b)(1)-(3), 24 P.S. § 17-1720-A(b)(1)-(3) (authorizing school districts of the first class to renew a charter for a period of one year if the school determines that there is insufficient data regarding the charter school's academic performance to assess that performance); Section 1726-A(a.1) of the Law, 24 P.S. § 17-1726-A(a.1) (requiring school districts of the first class to provide certain transportation in addition to what is required by non-first class school districts); Section 1726-(A)(d) of the Law, 24 P.S. § 17-1726-A(d) (mandating school districts of the first class to provide a copy of their transportation policy to the Department of Education); and Section 1729-A(a.1) of the Law, 24 P.S. § 17-1729-A(a.1) (permitting school districts of the first class to place specific conditions on the renewal of a charter for a charter school in corrective action status).

11

requires interpretation of the section to ascertain the legislative intent. This Court, in Northside Urban Pathways, recognized the importance of ensuring that the Law is not rendered unwieldy and that the General Assembly's intent in passing the Law is to ensure that students and parents are provided with charter school alternatives to the schools in their district. Northside Urban Pathways, 56 A.3d at 86-87. Both Northside Urban Pathways and Montessori further recognized the benefit and practicality of permitting charter schools to amend their charters to account for a charter school's changing circumstances, including changing or adding locations. The reasoning in Northside Urban Pathways and Montessori lead, inescapably, to the conclusion that the permissive authorization in Section 1722-A(d) does not prohibit a charter school located outside Philadelphia from seeking to add a second location, by amending its existing charter, when the charter school's circumstances so require. We note that, at argument, Charter School stated that it could not find one building that was large enough to safely house its students. The District's reliance on the proposed legislative amendments is misplaced as those amendments are merely *proposed*, and, as Charter School notes, equally could demonstrate the General Assembly's intent to resolve any ambiguity that resulted from the minority opinions in Northside Urban Pathways and Montessori. Accordingly, we decline to rely upon Section 1722-A(d), a *permissive* special provision associated only with the one school district of the first class in the Commonwealth, to prohibit the ability of all other charter schools in other school districts to amend the terms of their existing charters to allow the charter schools to make the "fundamental decision[s]" that would "allow the school to continue to operate," such as adding a second location for existing students. Id. at 86.

12

In summary, we conclude that there is no statutory prohibition against a charter school located outside a school district of the first class seeking to expand into a second location via an amendment to its charter. Accordingly, the CAB erred in holding that Charter School could not, as a matter of law, amend its Charter to add a second location.[8] Thus, as we did in <u>Northside Urban Pathways</u>, we reverse the CAB's Order, and we remand this matter to the CAB for it to review the District's decision not to allow amendment of the Charter as it would review a decision revoking or not renewing a charter under Section 1729-A(d) of the Law, 24 P.S. § 17-1729-A(d).

## IV. Conclusion

Because of our disposition of Charter School's main argument, we need not reach the other arguments it raised on appeal. Charter School had also argued that that: (1) the CAB's Order was invalid because the *acting* Secretary of Education participated as a member of the CAB; and (2) the CAB violated Charter School's due process rights by deciding the merits of Charter School's appeal instead of deciding only the procedural issued raised in the District's Motion. Were we to have reached these issues, we would not have found them meritorious. Charter School also argued that the District either waived its objections or is equitably estopped from asserting any challenge to Charter School's request to amend its Charter to operate at a second location. However, because of our conclusion that Charter School can, by amendment, seek to open a new location for Charter School's fifth through seventh grade students, we will not address the issue of

---

[8] Because Charter School could seek to add the second location by amending its Charter, the denial of the request to amend was not the denial of an application for a new charter and it was unnecessary for Charter School to obtain the number of signatures required by Section 1717-A(h)(2), (5) of the Law.

whether the District waived its objections to this second location.  The District provided reasons, in addition to its belief that such an expansion is not permitted by amendment under the Law, for its denial of Charter School's request; therefore, we are remanding this matter to the CAB for it to review the District's "decision in the same manner it would review a decision revoking or not renewing a charter." Northside Urban Pathways, 56 A.3d at 87.  As part of that review, the CAB will necessarily have to consider the questions of whether the District waived its objection to the second location and whether the District's additional reason for denying the amendment was irrelevant.

For the foregoing reasons, we reverse the Order of the CAB dismissing Charter School's appeal, and we remand this matter for the CAB to review the District's decision for denying Charter School's amendment request as it would review a school district's decision to revoke or to not renew a charter under Section 1729-A(d) of the Law, 24 P.S. § 17-1729-A(d).

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Valley Dual Language     :
Charter School,     :
           Petitioner     :
     :
        v.     :    No. 2010 C.D. 2013
     :
Bethlehem Area School District,     :
           Respondent     :

## O R D E R

**NOW**, July 22, 2014, the Order of the State Charter School Appeal Board (CAB) entered in the above-captioned matter is hereby **REVERSED**, and this matter is **REMANDED** to the CAB to review the Bethlehem Area School District's decision for denying Lehigh Valley Dual Language Charter School's amendment request as it would review a school district's decision to revoke or to not renew a charter under Section 1729-A(d) of the Act of March 10, 1949, P.L. 30, added by Section 1 of the Act of June 19, 1997, P.L. 225, as amended, 24 P.S. § 17-1729-A(d).

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER, Judge**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lehigh Valley Dual Language : 
Charter School, :
                Petitioner :
                 :
         v. : No. 2010 C.D. 2013
: Argued:  May 13, 2014
Bethlehem Area School District, :
                Respondent :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


DISSENTING OPINION
BY PRESIDENT JUDGE PELLEGRINI         FILED: July 22, 2014


      Because the Charter School Law (Law)[1] only permits an application for a charter school and not a charter school district, except in Philadelphia, I would hold that the State Charter Appeal Board (CAB) properly granted the Bethlehem Area School District's (School District) motion to quash and properly dismissed the Lehigh Valley Dual Language Charter School's (Charter School) appeal.  Accordingly, I respectfully dissent.

      As the majority recounts, the issue in this case is a simple one – may a charter school board operate two or more schools under one charter.  In finding

---

[1] Act of March 10, 1949, P.L. 30, added by Section 1 of the Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. §§17-1701-A – 17-1751-A.

that a charter school board can operate a school at more than one location, the majority does not rely on any provision of the Law or analysis of the Law. Instead, it conjures up some sort of unexpressed dicta or holding from our decision in *Montessori Regional Charter School v. Millcreek Township School District*, 55 A.3d 196 (Pa. Cmwlth. 2012), stating:

> While the District is correct that the majority opinion in *Montessori* did not analyze the issue of whether a charter school could have more than one location under the Law, which was not raised by the school districts in that case, this Court was clearly aware of the issue as it was set forth in the concurring and dissenting opinion. The majority opinion[] in *Montessori* … did not adopt the position of the minority opinion[], which would have interpreted the Law as not permitting charter amendments, and specifically charter amendments related to operating at more than one facility….

Majority Opinion, slip op. at 9-10. The majority opinion in *Montessori* said *nothing* about whether a charter school could operate at more than one location and, as such, it necessarily stands for *nothing* as precedent on that issue.

In analyzing the Law, it is clear that only one location is permitted under one charter. The Law provides that a charter school may only be created by application to establish either a single district charter school under Section 1717-A of the Law, 24 P.S. §17-1717-A, or a multi-district regional charter school under Section 1718-A(a), 24 P.S. §17-1718-A(a). Section 1719-A(11) of the Law, 24 P.S. §17-1719-A(11), states that an application to establish a charter school must indicate the address and a description of the physical facility in which the charter school will be located. There is simply no provision in the Law authorizing a

charter school to create a separate charter school facility with one exception that confirms this analysis.

Section 1722-A(d) of the Law, 24 P.S. §17-1722-A(d), states that "[n]otwithstanding any other provision of this act, a school district of the first class may, in its discretion, permit a charter school to operate its school at more than one location." In turn, Section 202, 24 P.S. §2-202, states, in relevant part, that "[e]ach school district having a population of one million (1,000,000) or more, shall be a school district of the first class." Because the School District is not a first class school district, the General Assembly did not grant it the power to permit the Charter School to operate at more than one location or facility. *See Veterans of Foreign Wars Post 1989 v. Indiana County Board of Assessment Appeals*, 954 A.2d 100, 106 (Pa. Cmwlth. 2008) ("The maxim *expressio unius est exclusio alterius* holds that the express inclusion of one thing implies the exclusion of another; this means that any omission by the legislature was deliberate.") (citations omitted).[2]

---

[2] I would also affirm the CAB's quashing of the appeal for the reason set forth in my dissent in *Northside Urban Pathways Charter School v. State Charter School Appeal Board,* 56 A.3d 80, 90-91 (Pa. Cmwlth. 2012) (Pellegrini, P.J., dissenting): that the CAB's jurisdiction is limited to appeals from a school district's denial of a charter school application under Sections 1717-A(i)(1) and 1718-A(c), 24 P.S. §§17-1717-A(i)(1), 17-1718-A(c); appeals from a school district's deemed denial of an application, under Section 1717-A(g), 24 P.S. §17-1717-A(g); and appeals from a school district's revocation or nonrenewal of a charter under Section 1729-A(d), 24 P.S. §17-1729-A(d). Because the General Assembly did not confer upon the CAB the power to consider the denial of a charter amendment request, such an appeal of a local agency adjudication is properly lodged in the court of common pleas of the county in which the school district is located. Sections 101 and 752 of the Local Agency Law, 2 Pa. C.S. §§101, 752; Section 933(a)(2) of the Judicial Code, 42 Pa. C.S. §933(a)(2).

Accordingly, unlike the majority, I would affirm the CAB.


_____
DAN PELLEGRINI, President Judge